**H. J. WHEELER SALVAGE CO., Inc., v. RINELLI & GUARDINO, Inc., et al.**

(District Court, E. D. New York. January 22, 1924. On Rehearing, February 19, 1924.)

1. **Patents ⟜328—Claim 2 of 1,405,173, for an apparatus for transferring viscous material, held to involve invention as to only one element, and not infringed.**

Claim 2 of Wheeler patent No. 1,405,173, for an apparatus for transferring viscous material from the interior of a maritime vessel to an overside receptacle, *held* not to involve invention as to any element except the nozzle, and, as defendant did not use a nozzle of the same kind, it was not infringed, in view of the status of the prior art.

2. **Patents ⟜328—Claim 1 of 1,405,173, for a method for transferring viscous material, held to involve invention, and infringed.**

Claim 1 of Wheeler patent No. 1,405,173, for a method for transferring viscous material from the interior of a maritime vessel to an overside receptacle, *held* not anticipated, to involve invention, and infringed, in view of the status of the prior art.

3. **Patents ⟜51(1)—Essential elements of "anticipation" of process stated.**

To anticipate a process patent, it is necessary not only to show that the prior patent might have been used to carry out the process, but that such use was contemplated, or that it would have occurred to an ordinary mechanic operating the device.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Anticipation.]

———

⟜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**4. Patents ⚹⇒26(1)—Regrouping old elements to solve particular problem may constitute invention.**

Even if all the elements are old, selection and regrouping to solve a particular problem may constitute invention.

**5. Patents ⚹⇒157(3)—Patentee entitled to use such words as to him best describe intention.**

A patentee has the right to use such words as to him best describe his intention, and they will be so construed as to effectuate that result.

**6. Patents ⚹⇒109—That claim for method was added by amendment without oath does not invalidate patent.**

That there was no claim for a method in the application when it was filed, and that one was added by amendment without a new oath, does' not make the patent invalid.

**7. Patents ⚹⇒109—Amendment, not setting up material change, need not be supported by supplemental oath.**

If applicant does not by an amendment present a conception materially different from, or enlarged over, that shown by the original application, no supplemental oath is necessary.

**8. Patents ⚹⇒109—Supplemental oath to amendment, adding claim derivable from original specification, not necessary.**

No supplemental oath is required to sustain an amendment adding a claim which is fairly derivable from the sworn disclosure of the original specification.

In Equity. Suit by the H. G. Wheeler Salvage Company, Inc., against Rinelli & Guardino, Inc., and Stephen Guardino individually. Bill of complaint dismissed as to defendant Stephen Guardino, and relief as against the other defendant granted in part.

W. H. Swenarton, of New York City, for plaintiff.

Munn, Anderson & Munn, of New York City, for defendants.

CAMPBELL, District Judge. This is an action in equity, brought by the plaintiff to restrain the alleged infringement of a patent No. 1,405,173, issued by the United States Patent Office to Henry J. Wheeler, assignor to H. J. Wheeler Salvage Company, Inc., dated January 31, 1922, and for damages. The defendant answered, alleging invalidity and noninfringement. The plaintiff not only seeks to recover judgment against the corporation Rinelli & Guardino, Inc., but also against Stephen Guardino individually.

Stephen Guardino was an officer of the defendant, and it seems to me that what he did with reference to Nordstrom was done for and on behalf of the corporation, and the provisions of the contract show that the machine to be built was not to infringe any of the patents or copyrights of the plaintiff. I therefore am of the opinion that the complaint in this action should be dismissed as to the defendant Stephen Guardino individually, and the motion made for such dismissal on his behalf is therefore granted, with an exception to plaintiff.

On examination of the certified copy of the pending application of Guardino, I find the same not to be competent, material, or relevant as evidence in this case, and the motion to strike out the same is granted, with an exception to the plaintiff.

⚹⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

[1] The plaintiff bases this action on claims 1 and 2 of the patent in suit, which read as follows:

"1. The herein described method of transferring viscous material directly from the interior of a maritime vessel to an overside receptacle, which consists in creating a high vacuum in said receptacle to thereby suck such material to an elevation and deliver it directly into said receptacle, and admitting air in small quantities into the suction end of the conveying pipe to emulsify said material.

"2. The apparatus described, comprising a series of exhaust tanks, an air pump, a system of unrestricted exhaust pipes connecting said tanks to said pump, means for driving said pump to maintain a high vacuum in said tanks, a system of suction pipes of less diameter than said exhaust pipes, connecting said tanks, a hose connected to said suction system and of the same diameter as said suction pipes, and a suction nozzle having a body of less diameter than said hose and a suction orifice of less area than such body."

Claim 1 of the patent in suit is for a method. The defendant contends that this claim is invalid for want of invention, and does not describe a true method, as contemplated by the term "art," under section 4886 of the Revised Statutes (Comp. St. § 9430), but is in fact nothing more than a description of the function or result flowing from the operation of the apparatus which is shown and described in the patent. The defendant also contends that the method claim is new matter, unsupported by a supplemental oath.

Claim 2 of the patent in suit is for an apparatus, and the defendant contends that it does not represent invention, but simply mechanical skill. The patent in suit states:

"It will be understood that it will serve successfully in transferring liquids, semiliquids, or other materials in any situations in which a lift is required above that attainable by the direct action of a suction pump."

And in my opinion it thereby makes relevant, as affecting the validity of the patent, much of the prior art that could not otherwise have been received. An examination of the patents offered in evidence by the defendant fails to show any direct anticipation, and no evidence was offered to show prior use. The following patents were offered to show the prior state of the art:

United States patent No. 1,319,797, issued to Edwin M. Rogers, dated October 28, 1919, discloses an air lift apparatus of that class in which the column of water raised is aerated and thereby lightened, to facilitate the raising thereof.

United States patent No. 45,153, issued to T. B. Gunning, dated November 22, 1864, discloses an improvement in oil ejectors for oil wells, and the manner of its operation is shown on page 1, as follows:

"From the above description it will be seen that when the air pump E is operated air will be forced down the tube D, and will pass out through the oblique holes b at its lower part in an upward direction in the lower part of the oil tube B, the oil being forced upward thereby in the tube B and passing into the enlarged part F thereof, from which it escapes through the flap or door G. The enlarged part F of the oil tube B admits of a space c, within it above the surface of the oil, and the tube H communicates with this space and conducts the gas which escapes from the oil to the air pump F, from which it is forced down the air-tube D (the latter being strictly a gas as well as an air tube), and is made again subservient in raising the oil up through the tube B."

United States patent No. 142,200, issued to Reinhold Boeklen and Jakob Fuchs, dated August 26, 1873, discloses an improvement in apparatus for emptying cellars, water-closets, etc., which is described therein as follows:

"This invention relates to the combination of a portable steam boiler, a portable vacuum vessel or pumping and suction chamber, with a cold water sprinkler, and a detachable hose or suction pipe with stopcocks, and a cold water supply pipe or reservoir, and certain connecting pipes and stopcocks between said boiler and vessel for conducting the steam to said vessel and to said hose separately and together, and between said vessel and furnace of said boiler for conducting and burning the foul air from said vessel, and between said cold water supply, said sprinkler and vessel, and said suction pipe, for condensing the steam in said vessel and hose, and cause vacuum and suction therein, and for stopping the outflow from said vessel when filled, and for discharging the contents in said hose back and cleaning the same."

United States patent No. 167,384, issued to Reinhold Boeklen, dated September 7, 1875, discloses an improvement in apparatus for emptying sewers and sinks. The patent provides for a mouth or entrance to the suction pipe smaller than the pipe, and for the creation of a nearly complete vacuum in the tank, as follows:

"The mouth or entrance of the hose or suction pipe G in the soil to be removed is made smaller than the body of the pipe, so that any substance that can enter the pipe will have a free passage through the same."

"It is well known that in removing soil, consisting of mixed fluid and solid matter, by a vacuum, the fluid portions are apt to pass through the more dense part, leaving the latter behind, and this is owing to having air in the suction pipe, and producing the vacuum gradually or partially. This is entirely overcome by my invention, as there is a rapid, concentrated, and instantaneous action from the force of a nearly complete vacuum in the tank."

United States patent No. 248,355, issued to Louis Schutte, dated October 18, 1881, discloses a liquid elevator, and its method is described as follows:

"My method of elevating the fluids is based upon the fact that, if an upright suction or lift pipe communicating at its upper end with a vacuum or partial vacuum or exhausting apparatus be connected at its foot with a fluid supply, the suction will cause the fluid to rise in the pipe to a height corresponding with the degree of the vacuum, never exceeding the limit of 32 feet, and that, if at this time air be admitted into the pipe at a point above the level of the fluid supply and below the top of the column in the pipe, that portion of the liquid standing above the point of air admission will be forced upward through the pipe by the excess of atmospheric pressure represented by the height of the liquid column between the point of air admission and the supply level. In this way the fluid may be carried above the usual limit of 32 feet by a single lift and with a continuous pipe."

United States patent No. 279,034, issued to Lyman Smith, dated June 5, 1883, discloses a pneumatic and automatic grain transfer apparatus which in part is therein described as follows:

"My invention consists in arranging upon a car of suitable dimensions an air-tight hopper of any suitable design or contour, which hopper is calculated to contain the load of an ordinary grain car, and which hopper is provided with inlet and outlet tubes, and with an exhausting apparatus for producing a vacuum in said hopper, whereby the grain is sucked out of one car into the hopper, and by a reversal of the direction of the exhausting apparatus it becomes a blower, and thus by the same apparatus that causes the grain to

rush into the hopper also causes it to be blown out into the car to be loaded, evenly distributing it all over the bed of the car, the grain in the meantime having been weighed by the operator."

Provision is made for an air tube to aid in forcing the grain out of the discharge mouth:

"When discharging the grain, it sometimes happens that it becomes choked at the point of exit. To overcome this I locate an air tube, f, at a suitable position within the hopper. It extends sufficiently high to prevent the grain from entering its mouth, and down to a point within the discharge opening, so that, when pressure is let onto the hopper, the air passing down the pipe f through the grain to the point of exit forces the grain out of the discharge mouth, and thus not only prevents it choking up, but also facilitates its discharge."

—and for the creation of a vacuum in the hopper:

"To this chamber i I attach the pipe C at one end, which connects to the exhauster and blower D at its other end, and by means of which the air is exhausted from the hopper or bin A, thereby creating a vacuum therein."

United States patent No. 289,315, issued to Lyman Smith, dated November 27, 1883, discloses a mouthpiece for grain-transferring apparatus, which refers to a vacuum chamber, and provides for the admission of air at the mouthpiece as follows:

"A is the mouthpiece, which in practice is made about 30 inches in width across the face a, and with an opening b, of about 1½ inches in width. The mouthpiece is preferably made of cast iron, and at its rear end connects, by a suitable coupling, c, with a 6-inch flexible pipe, B; which leads to the stationary grain supply pipe of the vacuum chamber of the apparatus, as will be understood by reference to the patents above referred to."

"The special advantages of the mouthpiece herein described consist in the means whereby it may be conveniently moved about the floor of the car or other place, and whereby a thorough mixture of air with the grain, etc., may be accomplished, it being apparent that a sheet or body of air of the full width of the grain inlet is mixed with the grain at the inlet. It is also important that the mixure of air should be below the grain entering the mouthpiece."

United States patent No. 305,976, issued to Lyman Smith, dated September 30, 1884, discloses a pneumatic grain transfer and storage system, and provides for the creation of a vacuum in a bin where grain has been drawn and dried to destroy all animal life.

United States patent No. 323,226, issued to Lyman Smith, dated July 28, 1885, discloses a pneumatic grain elevator and transfer apparatus, in which a vacuum chamber is employed.

United States patent No. 536,858, issued to J. B. G. Donato, dated April 2, 1895, discloses an apparatus for lifting water, and its operation is therein described as follows:

"The apparatus being set up as shown in Fig. 1, and the tanks F, H, and P being full of air, the valves e³ and n' are closed, and the air is exhausted from the tanks H and F by means of the air pump M. As soon as the gage h' shows a sufficient vacuum, which vacuum will depend upon the height to which the water is to be lifted, the valve e³ is opened. There will at once be an influx of air through the hole b, but at the same time the suction will almost instantly draw the water from the well, up in the pipe B above the said hole b, and the air and water will together rise in the pipe E. The air in entering the inlet b will form small air pistons, such as a, between which

short broken columns of water *a* will be included, and it has been found that where constant conditions prevail, these air globules or pistons will occur at regular intervals, the whole resembling as it passes through the transparent portion *e* of the pipe *E*, a phantom chain pump."

This was one of the patents cited by the Examiner.

United States patent No. 570,844, issued to J. B. G. Donato, dated November 3, 1896, discloses a liquid supply system, and provides for pumping by vacuum and the admission of air near the entrance of the suction pipe, and the result is therein described as follows:

"This vacuum will cause the atmospheric pressure to force water into the pipe *K'* from the source of liquid supply *W'* and also air through the air inlet *M*. The globules of air drawn in will act like small pistons between corresponding pistons of water, the whole forming a column of alternate lengths of air and water in the pipe *K'*, and this air and water will flow into the chamber *E'*, the water remaining in the said chamber and the air being drawn off from the top thereof by means of the pipe *d'*."

This patent was also cited by the Examiner.

United States patent No. 847,947, issued to D. T. Kenney, dated March 19, 1907, discloses apparatus for removing dust, which is therein described as follows:

"The apparatus employed comprises in combination a suction nozzle adapted to be moved over the surface to which it is applied for cleaning and having a narrow inlet slot, a suction creating device capable of maintaining a sufficient vacuum, and impurities collecting means between the nozzle and suction creating device and suitably connected therewith for removing the impurities from the air."

United States patent No. 847,948, issued to D. T. Kenney, dated March 19, 1907, discloses an apparatus for removing dust, and comprises the following:

"The apparatus comprises a hand implement, which is applied to and moved over the surface to be cleaned and through which the dust and dirt is drawn by suction, a double separator in which a partial vacuum is maintained, a suction creating device which is preferably a piston pump for maintaining the vacuum in the separator air connections between the pump and separator, and air connections consisting at least in part of flexible pipe connections between the hand implement and the separator."

United States patent No. 1,000,345, issued to O. A. Roed, dated August 8, 1911, discloses a water elevating apparatus, and therein describes the combination employed in the practice of his invention as follows:

"In the practice of my invention, I employ, in combination, a tube composed of axially alined sections, connected by a constricted portion or throat, and a conduit one extremity of which extends in the fluid to be raised and which terminates at its opposite end within the tube in proximity to the point of constriction. The ingress section of the tube which contracts to a small diameter, communicates with the higher portion of a stream while the egress section which expands gradually from the constricted extremity of the upper section, projects into the fluid at a point of lower elevation and the conduit which, as mentioned above, terminates within said tube, may be provided near its opposite lower extremity, with an air inlet for the purpose of increasing, by aeration, the buoyancy of the transported fluid so as to cause it to rise to a higher elevation. By reason of the peculiar construction of the tube as hereinabove described, the fluid flowing into the contracted ingress portion obeying a well-known law of hydraulics, will increase in velocity as it approaches

the constricted throat, and if the area at the throat is·sufficiently reduced will cause the formation of a vacuum at the point where the fluid flows into the expanded egress section. As the conduit through which the fluid is drained, terminates at the point where the vacuum is formed, a suction is created which draws the fluid from its source, through the conduit, into the expanded portion of the tube to be carried away with the water flowing therethrough, this suction being caused by the unbalancing of atmospheric pressure at the throat section mainly due to the pilot tube effect produced by the rapid flow of fluid past the orifice of the conduit. The total suction thus obtained is sufficiently efficient to elevate water from a low source to a point of higher elevation and, although the invention may be employed for various purposes, it is particularly adapted for draining off the sewage from the subterraneous pipe lines in municipalities where the stream to which said sewage is to be conveyed, is above said lines."

This patent shows a valve-controlled air inlet adjacent the inlet end of a liquid withdrawing pipe, and was also cited by the Examiner.

United States patent No. 1,106,231, issued to Aquila B. Marshall, dated August 4, 1914, discloses a vacuum cleaner, which is therein described as follows:

"My invention has for its object to provide a vacuum cleaner having a suction cleaning tool with a spring valve for normally closing a valve opening in the tool, but which will open, should the mouth of the tool inadvertently become closed or partially closed when used by an inexperienced operator, to permit the entrance of air to the main before the pressure in the main is reduced to a point at which the motor for driving the vacuum pump is automatically stopped by atmospheric pressure; means ,being provided for stopping the motor by atmospheric pressure when the pressure in the main falls to a predetermined point."

United States patent No. 1,053,665, issued to I. H. Spencer, dated February 18, 1913, discloses a pneumatic cleaning tool which has a restricted nozzle. This patent was also cited by the Examiner.

From an examination of the prior art, it is apparent that plaintiff cannot broadly claim a patent for any element which forms part of the combination in claim 2 of the patent in suit, with the possible exception of the particular form of nozzle described by it. Nozzles with a suction orifice of less area than the body are not new, but the prior art shows no use of such a nozzle with a vacuum such as is provided for in the patent in suit.

Defendant claims that in all the patents introduced to show the prior art, wherever a vacuum was produced, it was as high as was necessary for the accomplishment of the purpose designed, and that the use of a higher vacuum in the patent in suit was not invention, but merely the result of mechanical skill. Standing alone, this might well be so; but the use of the high vacuum with the particular form of nozzle described by the plaintiff in the patent in suit, together with the other elements enumerated, results in accomplishing that which it had not been possible to accomplish before, and I consider it invention.

It must be borne in mind that there is no provision in said claim 2 for any air inlet, and therefore the claim must be strictly limited, because all that is claimed is a pump which functions as do other pumps, but because of the peculiar combination is able to accomplish that which had not been accomplished before.

The defendant does not use a nozzle of the same kind as described by the plaintiff in the patent in suit. The defendant's apparatus is like that of the plaintiff, except as to the nozzle used by it, and plaintiff concedes that defendant does not infringe claim 2 of the patent in suit when it uses the nozzle offered in evidence as Plaintiff's Exhibit No. 13, but contends that defendant does infringe claim 2 of the patent in suit when it uses the nozzle offered in evidence as Plaintiff's Exhibit No. 4.

With this contention I cannot agree, because the mere use of a nozzle with a restricted orifice was well known to the prior art, and the plaintiff is restricted by claim 2 to a combination including a nozzle of the character described in said claim, and I am unable to find that the suction orifice of Plaintiff's Exhibit No. 4 is less in area than the body of the nozzle, and therefore it does not infringe claim 2 of the patent in suit.

[2] Having found that defendant does not infringe claim 2 of the plaintiff's patent in suit, we now will consider claim 1. This is for a method, but defendant contends it does not describe a true method, but merely the functions of the plaintiff's apparatus. If this be true, then, of course, it would not be "art," as that term is used in section 4886 of the Revised Statutes, and a patent could not be legally issued; but, if the process involves mechanical operation, the claim may nevertheless be valid, if a new result is produced independently of particular mechanism for producing it. Buffalo Forge Co. v. City of Buffalo (D. C.) 246 Fed. 135; Expanded Metal Co. v. Bradford, 214 U. S. 366, 29 Sup. Ct. 652, 53 L. Ed. 1034.

[3] There is no direct anticipation of the method claim shown in the prior art. To anticipate a process patent, it is necessary, not only to show that the prior patent might have been used to carry out the process, but that such use was contemplated, or that it would have occurred to an ordinary mechanic operating the device. Carnegie Steel Co. v. Cambria Iron Co., 185 U. S. 403, 22 Sup. Ct. 698, 46 L. Ed. 968.

Prior to the time that Wheeler commenced to operate the apparatus described in the patent in suit, the removal of the viscous material from oil-burning ships had been an expensive and time-consuming undertaking, that of taking out the material by buckets; but by what the plaintiff claims as his method the time has been very greatly reduced and the costs also largely reduced. Before the advent of what the plaintiff claims as his method, the viscous material, when removed, had to be taken out to sea and dumped, or otherwise disposed of, so as not to pollute the harbor, thus adding to the expense; but since that time the viscous material, removed by what plaintiff claims as his method, has become of commercial value to the shipyards, which gladly take the supply offered, and are able to use the same as fuel in their oil-burning power plants, thus saving to them large sums of money annually.

The commercial success of what plaintiff claims as its method, as well as the apparatus, appears from the business done by the plaintiff and the licenses taken from it, under which others are working, and this success does not appear to have been the result of extensive ad-

vertising. If the method claimed by plaintiff be a true method, then the defendant cannot dispute that it is of practical value, because the defendant has tendered to it the sincerest form of flattery, that of imitation.

The problem that confronted the inventor and the way of overcoming the same are best expressed in his own words:

"The invention relates to means for lifting and transferring material from a lower to a higher level, and as it has been carried out in practice is designed more particularly for pumping the residue from the oil tanks of oil-burning vessels. This waste material is generally a thick, greasy mass, almost jellylike in consistency, very unpleasant, and difficult to handle. Its removal by ordinary methods is a slow and exceedingly dirty operation; usually the material is dipped from the tanks in buckets, which are passed by hand to the main deck of the ship, emptied into barrels, and passed back empty for refilling at the oil tanks. The barrels as filled are lowered over the side to a barge or lighter, to be carried away. The material is of such nature as to preclude its handling by a force pump, and as the lift from the tank covers to the ship's rail is generally from 30 to 50 feet, it is impracticable to remove it by ordinary suction pumping operations. The object of the invention is to provide means for transferring the material directly from the oil tanks to overside receptacles. I have discovered with a combined vacuum suction and siphon action, this and other materials may be raised and delivered overside through a hose, thus permitting the operation of cleaning the oil tanks to be quickly and economically performed, while avoiding the discomfort and dirt attending the usual operation."

There is shown in said patent and actually used by Wheeler an apparatus comprising a series of exhaust tanks, an air pump, a system of exhaust pipes, comprising 2½-inch pipes, which connect said tank to said pump, a suitable belt for driving the pump to maintain a high vacuum in the tanks, a system of suction pipes of less diameter than said exhaust pipes, namely, comprising 2-inch pipes, which are intended to connect said tanks, a hose connected to the said suction system, and of the same diameter as the suction pipe, a suction nozzle having a body of less diameter and flattened at the orifice end, and a suction orifice of less area than said body, namely, an orifice 2 inches long by 1¼ inches wide, and an air inlet aperture in such body above such orifice, and an aircock controlling such aperture.

[4] The prior art undoubtedly shows vacuum pumps capable of creating a high vacuum in a receptacle, and which would be capable of elevating water to a height of 32 feet, and also the introduction of air into the suction end of the conveying pipe, and by the familiar bubble or piston method elevating water to a greater height, but no one before Wheeler ever suggested that by the creation of a high vacuum in a receptacle it would be possible to suck up material of the viscosity offered in evidence in this suit, and by the admission of air in small quantities into the suction end of the conveying pipe emulsify the said material, and, even if all the elements of the invention are old, the selection and regrouping to solve this problem was invention. Frederick Iron & Steel Co. v. Sanford Riley Stoker Co. (C. C. A.) 287 Fed. 495.

The apparatus described in the plaintiff's patent in suit does accomplish the purpose which Wheeler designed to accomplish, but it may be accomplished by other forms of apparatus, or it may be accomplished only by the creation of the high vacuum in a receptacle by the use of

any suitable vacuum pump and the suction hose, if the method claimed by the plaintiff is followed. All that is required is that the whole orifice of the intake end of the hose shall not be submerged in the material, but a small portion of the orifice left unsubmerged, so that a relatively small quantity of air shall be admitted.

Defendant contends that the plaintiff's apparatus is operated on the old and well-known piston or bubble method, and, if this was so, the plaintiff could not prevail, as that method was well known to the art long prior to the date of plaintiff's claimed invention. But with this contention I cannot agree, because, both from the testimony and the observations I made at the time of the demonstration, I am convinced that the material is not sucked or pushed up by pistons of air, but, on the contrary, that it is cracked and carried up in small particles, and the material, being emulsified is changed into an oily substance suspended in a fluid (air) capable of holding it in a state of minute subdivision.

By what plaintiff claims as its method, therefore, not only is the material elevated, but its character is changed, and what was worse than useless becomes valuable as fuel. This I believe to be invention. The admission of air at or near the intake end of the suction nozzle was known to the prior art, but never before was it claimed or shown that by such admission of air could the results achieved by what plaintiff claims as its method be accomplished.

This, in combination with high vacuum, are novel features, and that they are not solely the result of mechanical skill is shown by the fact that I saw viscous material pumped by this method which the expert for defendant had theretofore said he did not believe could be pumped. Further, to come to the realization that a giant was required to do what was called a boy's work, but what the boy had never been able to do, I consider to be invention. H. D. Smith & Co. v. Peck, Stow & Wilcox Co. (C. C. A.) 262 Fed. 415.

Defendant questions the meaning of "small" quantities of air, as used in claim 1; but the word "small," it seems to me, may properly be understood as commonly used. The word "small" is relative. To determine what is meant by a small quantity of air to be admitted, you would properly compare the amount of air that would be admitted through the one-fourth to three-eighths of an inch inlet with the material that would be admitted through the orifice of the nozzle for the intake of the material 2 inches long by one-fourth of an inch wide, and this is in the ratio of 1 to 24; but, should you compare the weight of the air admitted with the weight of the material admitted, it would be in the ratio of 1 to 21, and in either event the quantity of air admitted would be small. The fact that the air expands after admission is well known, but that does not render untrue the statement that it is admitted in small quantities.

Due to the vacuum created and the relatively small air intake, the velocity of the air admitted is great, and it is due to this fact that the cracking of the viscous material takes place, because, if the air intake was increased in size, and more than a small quantity of air admitted, the velocity would be reduced, and it would fail to perform the func-

tion of cracking or emulsifying, which is one of the novel features of this claim.

[5] Some question has been raised as to the meaning of the word "emulsify," as used by Wheeler in claim 1 of the patent in suit; but a patentee has the right to use such words as to him best describe his intention, and they will be so construed as to effectuate that result. The word "emulsify" was used by the patentee in the patent in suit as I have hereinbefore used it in this opinion; that is, to form an emulsion, which is an oily substance suspended in some fluid capable of holding it in a state of minute subdivision, and not in a chemical sense, as such term is understood in refinery operations, which involve the chemical disintegration of heavy residues into higher chemical compounds, because in the patent he states:

"The function of the air inlet aperture $h^1$ is to supply a quantity of air to the mass of thick jellylike material entering the nozzle $H^1$ and agitate or crack such material mechanically by mixing air therewith and thus effecting an emulsion or mechanical dilution essential to the transfer."

The word "fluid" was of course used in the definition in a generic sense, and includes air.

I can find no support for the defendant's contention that claim 1 of the plaintiff's patent in suit cannot be sustained, because it was not supported by a supplemental oath. Nothing whatever was added to the specification of the patent in suit from the time of first filing the application in the Patent Office, and the original oath covered everything described in the application as filed.

[6] The mere fact that there was no claim for the method in the application when it was filed, and that one was added by amendment without a new oath, does not make the patent invalid. John R. Williams Co. v. Miller, Du Brul & Peters Mfg. Co. (C. C.) 107 Fed. 290.

[7] The real test is: Does the applicant by the amendment present a conception materially different from or enlarged over that shown by the original application? and, if he does not, no supplemental oath is necessary. Camp Bros. & Co. v. Portable Wagon Dump & E. Co., 251 Fed. 603, 163 C. C. A. 597.

[8] Claim 1 of the patent in suit, in my opinion, is fairly derivable from the sworn disclosure of the original specification, and therefore no supplemental oath was required to sustain the amendment adding claim 2, which eventually became claim 1. Westinghouse E. & Mfg. Co. v. Metropolitan E. Mfg. Co. (C. C. A.) 290 Fed. 661.

In whatever way the apparatus used by the defendant may differ from that used by the plaintiff, which difference seems to me to be mainly in the form of the suction nozzle, the fact still remains that both plaintiff and defendant use the same method described in claim 1 of the patent in suit; and, as I have found that said claim is for a true method, it follows that the defendant Rinelli & Guardino, Inc., infringe that claim of the plaintiff's patent in suit.

Claim 1 of the patent in suit is a valid claim and claim 2, construed as I have hereinbefore indicated, is a valid claim. The defendant Rinelli & Guardino, Inc., infringe claim 1, but do not infringe claim 2, of the patent in suit.

The bill of complaint should be dismissed as to the defendant Stephen Guardino. The plaintiff is entitled to the relief asked for in the bill of complaint against the defendant Rinelli & Guardino, Inc., only as to claim 1 of the patent in suit, and said defendant is entitled to a decree as to claim 2 of the patent in suit.

Settle decree on notice.

## On Rehearing.

The reargument requested by the defendant Rinelli & Guardino, Inc., has been had, and I have also at its request witnessed a demonstration of the defendants' structure. I find that, when the defendant employs its apparatus with its nozzle, as shown in either Plaintiff's Exhibit 4 or Plaintiff's Exhibit 13, the operation thereof constitutes an infringement of claim 1 of the patent in suit.

The demonstration of the defendants' structure did not, in my opinion, disprove the theory that in the operation of its apparatus there is an emulsification or breaking up of the viscous material, so that it can be said to constitute particles suspended in fluid (air). In my opinion the defendant does employ the method of claim 1 when it uses its structure, either with the nozzle as shown in Plaintiff's Exhibit 4 or Plaintiff's Exhibit 13. Even in the use of the nozzle, Plaintiff's Exhibit 13, the defendant uses the high vacuum, and while the orifice of the nozzle is large, the orifice for the intake of material before the small quantity of air is admitted is restricted, and thus the method of claim 1 is employed.

In discussing the meaning of a small quantity of air, as the same is used in the patent in suit in the opinion filed herein, I said:

"To determine what is meant by a small quantity of air to be admitted, you would properly compare the amount of air that would be admitted through the one-fourth to three-eighths of an inch inlet with the material that would be admitted through the orifice of the nozzle for the intake of the material 2 inches long by one-fourth of an inch wide, and this is in the ratio of 1 to 24; but should you compare the weight of the air admitted with the weight of the material admitted, it would be in the ratio of 1 to 21, and in either event the quantity of air admitted would be small."

A question, however, has been raised as to whether the proportions stated by me are shown by the evidence, and I therefore substitute the following statement for that last quoted:

To determine what is meant by "admitting air in small quantities," you would properly compare the small area of the air inlet with the much larger area of the orifice of the nozzle for the intake of the material, but should you compare the weight of the material admitted you would find that the weight of the material greatly exceeded that of the air, and in either event the quantity of the air admitted would be small.

Defendant contends that, as the victory of the plaintiff was not complete, but that each side won and lost, no costs should be allowed to the plaintiff, but with this I do not agree because the real contest in this case was centered around claim 1, the method claim, and the defendant's victory in being found not to infringe claim 2 is not to be compared with the victory achieved by the plaintiff in sustaining the validity of both claims 1 and 2, and also sustaining its contention that

the defendant was infringing claim 1. I therefore believe that costs should be awarded to the plaintiff against the defendant, as stated in my opinion filed herein.

I have carefully considered the application of the defendant to suspend all accounting proceedings until after the hearing of the appeal in this case by the Circuit Court of Appeals of the Second Circuit, if an appeal be promptly taken, and likewise to suspend the rendering of the injunction until the hearing of such appeal, upon the filing of a surety bond by the defendant, and the decree herein may provide for the suspending of all accounting proceedings and suspending the rendering of the injunction until after the hearing of the appeal in this case by the Circuit Court of Appeals of the Second Circuit, if such appeal be promptly taken, and upon the defendant Rinelli & Guardino, Inc., filing a surety bond in the sum of $50,000.

Submit a decree with the proper recitals as to the reargument in the form heretofore submitted by plaintiff, except that the provisions for taking testimony in the district of New Jersey and the Southern district of New York are to be omitted, and the provision as to suspension of all accounting proceedings and the suspension of rendering injunction upon the giving of the bond are to be included.

The same to be settled on notice.