## SALVAGE PROCESS CORPORATION v. ACME TANK CLEANING PROCESS CORPORATION.

### No. 7974.

District Court, E. D. New York.

May 7, 1937.

Darby & Darby, of New York City (Samuel E. Darby, Jr., of New York City, of counsel), for plaintiff.

W. Hastings Swenarton, of New York City, for defendant.

CAMPBELL, District Judge.

This suit is brought for the alleged infringement of the following patents:

(1) Patent No. 1,405,173, issued to Hervey J. Wheeler, assignor to H. J. Wheeler Salvage Company, Inc., for pumping apparatus granted January 31, 1922, on an application filed June 16, 1920, of which claim 1 is in suit.

(2) Patent No. 1,894,234, issued to Gunnar C. Engstrand, assignor to Sludge Pumping, Inc., for oil pumping apparatus granted January 10, 1933, on an application filed October 20, 1932, of which claims 1 and 2 are in suit.

(3) Patent No. 1,964,726, issued to Gunnar C. Engstrand, assignor to Sludge Pumping, Inc., for oil pumping apparatus granted July 3, 1934, on an application filed August 19, 1932, of which claim 5 is in suit.

The title of the plaintiff to the patents and its capacity to sue is not questioned.

Claim 1 of the Wheeler patent 1,405,173 has been adjudicated by this court to be valid and infringed in the following cases tried before me: H. J. Wheeler Salvage Co., Inc., v. Rinelli & Guardino, Inc., et al., 295 F. 717, and Salvage Process Co. v. J. Shewan & Sons, Inc., et. al., 26 F.(2d) 258.

There has been no adjudication of either of the Engstrand patents in suit.

The defense chiefly relied upon by defendant is that of noninfringement, there being no contention of invalidity of either of the patents in question, unless and except this court construes the claims broad enough to cover defendant's apparatus and method of operation, in which event defendant asserts as an additional defense that the claims in suit are invalid in view of the prior art.

A decision of this court, 15 F.Supp. 669, by another judge, awarding a preliminary injunction to plaintiff in this case, was reversed upon appeal, (C.C.A.) 86 F.(2d) 725, as was also an order punishing defendant for contempt, (C.C.A.) 86 F.(2d) 727, but they do not determine the issue tendered on this trial.

Each of the three patents in suit is directed to the cleaning or removal of sludge from tanks, such, for example, as are used by oil burning or transporting boats.

I have in my opinions, in the two former cases cited, somewhat at length stated, and the evidence in this case shows, that prior to the advent of the Wheeler patent the removal of sludge was laboriously accomplished solely by the time-consuming and expensive method of shoveling it into buckets, and hoisting them out of the holds of the ships.

The claims in suit of the patents in suit read as follows: Claim 1 of the Wheeler patent, No. 1,405,173:

"1. The herein described method of transferring viscous material directly from the interior of a maritime vessel to an overside receptacle, which consists in creating a high vacuum in said receptacle to thereby suck such material to an elevation and deliver it directly into said receptacle, and admitting air in small quantities into the suction end of the conveying pipe to emulsify said material."

Claims 1 and 2 of the Engstrand patent, No. 1,894,234:

"1. The method of pumping viscous material characterized by admitting steam at high velocity in the direction of flow at the discharge end of an open transmission line to create a high vacuum to thereby suck an air stream through the transmission line and admitting air at high velocity at the intake end of the transmission line to thereby blow the material into fragments which are suspended in the air stream during transfer through the transmission line.

"2. A pumping apparatus comprising in combination an open transmission line, steam jet means for creating a high vacuum at the discharge end of the transmission

line and air cracking means at the intake end thereof."

Claim 5 of the Engstrand patent, No. 1,964,726:

"5. The method of pumping viscous material characterized by admitting a high pressure steam jet at high velocity at the intake end of a transmission line to thereby suck the material into the line in a solid column and blow it into fragments, retarding the material in the immediate vicinity of the steam jet and permitting the high pressure stream to expand unimpeded and at all times to discharge freely into the atmosphere."

The Wheeler invention, as defined in claim 1 of patent No. 1,405,173, is for a method of removing sludge through a pipe line by means of suction created by a high vacuum, and the admission of air with the sludge at the intake end of the nozzle.

I described what I considered the invention of claim 1 in my opinion in the case of H. J. Wheeler Salvage Co., Inc., v. Rinelli & Guardino, Inc., et al. (D.C.) 295 F. 717, 725, 726, and I repeat it here:

"The apparatus described in the plaintiff's patent in suit does accomplish the purpose which Wheeler designed to accomplish, but it may be accomplished by other forms of apparatus, or it may be accomplished only by the creation of the high vacuum in a receptacle by the use of any suitable vacuum pump and the suction hose, if the method claimed by the plaintiff is followed. All that is required is that the whole orifice of the intake end of the hose shall not be submerged in the material, but a small portion of the orifice left unsubmerged, so that a relatively small quantity of air shall be admitted.

"Defendant contends that the plaintiff's apparatus is operated on the old and well-known piston or bubble method, and, if this was so, the plaintiff could not prevail, as that method was well known to the art long prior to the date of plaintiff's claimed invention. But with this contention I cannot agree, because, both from the testimony and the observations I made at the time of the demonstration, I am convinced that the material is not sucked or pushed up by pistons of air, but, on the contrary, that it is cracked and carried up in small particles, and the material, being emulsified is changed into an oily substance suspended in a fluid (air) capable of holding it in a state of minute subdivision.

"By what plaintiff claims as its method, therefore, not only is the material elevated, but its character is changed, and what was worse than useless becomes valuable as fuel. This I believe to be invention. The admission of air at or near the intake end of the suction nozzle was known to the prior art, but never before was it claimed or shown that by such admission of air could the results achieved by what plaintiff claims as its method be accomplished.

"This, in combination with high vacuum, are novel features, and that they are not solely the result of mechanical skill is shown by the fact that I saw viscous material pumped by this method which the expert for defendant had theretofore said he did not believe could be pumped. Further, to come to the realization that a giant was required to do what was called a boy's work, but what the boy had never been able to do, I consider to be invention."

The two Engstrand patents are for inventions made subsequent to Wheeler and are directed to two different means for creating the necessary suction for drawing the sludge and air, admitted into the intake nozzle of the pipe line, out of the hold of the ship, through the line for subsequent disposal.

The Engstrand patent, No. 1,894,234, is directed to the use of a steam evactor or jet pump located close to the discharge end of the line. Claim 1 is for the method and claim 2 is for the apparatus.

The Engstrand patent, No. 1,964,726, is directed to the creation of the necessary suction in the transmission line by the utilization of a steam injector at the intake end of the transmission line, with the steam flowing in the direction of the flow of the sludge and air through the line. The pipe line is made slightly narrower at the point of connection with the steam inlet, so as to slightly retard the flow of the sludge through the pipe line at that point, with the result that the steam, being admitted at high velocity, blows the sludge into fragments, all as clearly recited. Claim 5 is for the method.

The defendant's apparatus it is conceded is correctly shown in Exhibit 4.

In that apparatus, at about 25 feet from the end of the nozzle, there is a steam inlet (booster-siphon) to admit steam under pressure into the line for travel in the direction of flow of the sludge. The line discharges into a receiver, which is connected

to a duplex pump. There is a by-pass from the receiver to an evactor steam pump adjacent the exhaust tank. Steam is admitted to the evactor pump for creating suction in the line.

The duplex pump, the steam booster-siphon 25 feet from the intake end of the line, and the steam evactor pump near the exhaust end of the line, all create suction in the line.

It is conceded that in operation the intake nozzle is not completely submerged.

This is intentional, as it is desired to have atmospheric air enter the line at the nozzle. See testimony of the witness Olsson and Exhibit C.

I heard and have read the testimony of the witnesses, and have observed the operation of defendant's system, and I am convinced that the material sucked in at the nozzle is emulsified before it reaches the booster-siphon 25 feet from the nozzle by the admission of the small quantity of air at the intake nozzle, therefore but one question remains, and that is whether a high vacuum is created, which I will discuss later.

The defendant utilizes a steam evactor pump adjacent the discharge end of the transmission line partially for the creation of a vacuum in the transmission line to thereby suck the sludge and air emulsion there-through. This appears to be the claimed subject matter of the Engstrand patent 1,894,234, but three questions remain, and they are whether a high vacuum is created, whether the line is an open transmission line, and whether the evactor pump is at the end of the line, which I will discuss later.

The defendant by means of steam at high pressure injected into the line by the booster-siphon 25 feet from the intake end of the transmission line assists in creating the necessary vacuum and suction for the purpose of causing additional suction in the line due to its direction and speed of flow; heating the viscous sludge and air to reduce its viscosity; and to further fragment the oil and air emulsion at that point in its travel. This appears to be the claimed subject matter of the Engstrand patent 1,964,-726, but there remains the question whether the admission of the steam about 25 feet from the intake end can be construed as being at the intake end of the transmission line as required by the claim in issue.

As I have said, I am convinced that defendant's equipment is operated on the emulsion principle of the Wheeler patent in suit; defendant, however, contends that it operates its equipment on the piston principle. If defendant's contention was sustained, it would not infringe the Wheeler patent; therefore I feel that I should point out the facts which have convinced me that defendant uses the emulsion principle, as that is defined in the Wheeler patent in suit.

If the defendant was using the piston principle, there would be no need for the admission of air with the sludge at the intake nozzle. It is conceded that in operation the intake nozzle of defendant's equipment is not completely submerged, and I have hereinbefore pointed out that is deliberate.

Physically and scientifically it is impossible for defendant's equipment to operate on the piston principle.

If the system operated on the piston principle, it would, as developed by the cross-examination of defendant's witness Olsson, be necessary for a solid slug of sludge to be drawn into the line to a point about 6 feet above the inlet for the high-pressure steam. The steam would cut off the slug "like a knife" and the vacuum in the line above this 6-foot slug, as well as the pressure of the steam behind it, would carry that slug completely through the system to the discharge end, before the next slug would form about 6 feet above the steam inlet. As the steam is admitted continuously to the line at a pressure in excess of 100 pounds per square inch, it shatters the sludge and air into fragments as it passes the steam inlet, and prevents slugs from being formed. I observed the demonstration of defendant's apparatus and saw that the intake of air and sludge at the nozzle end was continuous and not intermittent. Further, there was not a discharge of sludge followed by a discharge of air and steam of equal duration, nor was the discharge in a series of intermittent slugs. My observations at the demonstration coincide with those of plaintiff's witness Parker. The defendant uses the emulsification principle and not the piston principle.

Defendant contends that its system is not a high vacuum system and this contention is evidently based on the fact that it inserts a vacuum gauge in its transmission

line, that such gauge does not show a higher vacuum than 12 inches, and inserts a relief valve in its receiver set at 12 inches of vacuum, and the belief that that is the maximum vacuum effected in its system. That belief seems to me to be erroneous. Vacuum is measured in terms of air rarification, and is expressed in terms of absolute pressure. In defendant's system both air and steam are used, and therefore the absolute pressure in defendant's system is the sum of the absolute pressure of both air and steam (Dalton's Law).

Parker testified, and his testimony I accept as true, that 12 inches of vacuum in defendant's receiver is equivalent to 18 inches of absolute pressure (perfect vacuum of 30 inches less 12 inches gauge pressure equals 18 inches). The absolute pressure of steam at its temperature in the receiver, however, is 10 inches, so that the absolute pressure of the air alone is the difference between 18 and 10, that is, 8 inches, and 8 inches absolute pressure of air is equal to 22 inches of vacuum (air rarification). On this showing the defendant utilizes the equivalent of 22 inches of air vacuum in its system. Claim 1 of the Wheeler patent in suit is for a method, and the invention claimed by Wheeler therein is not concerned with how the suction or vacuum is created, the only requirement in this respect is that a "high vacuum" be utilized to create the necessary suction in the line, and what I quoted from my opinion, in the case of H. J. Wheeler Salvage Co., Inc., v. Rinelli & Guardino, Inc., et al., supra, applies with equal force in this case.

A vacuum 22 inches is a high vacuum, and the defendant utilizes a high vacuum and the mulsification principle in its system. In considering what is a high vacuum, we are considering as of the date of the patent and not of the present time. The patent does not require a vacuum of 25 inches; the only mention of such vacuum is in the specifications, where it is said: "The capacity of the air pump is sufficient to maintain a high vacuum in the exhaust tanks F, 25 inches of mercury or higher, when the suction orifice h is not submerged and the air-cock $H^2$ open."

█ Defendant infringes the Wheeler patent in suit.

As to the Engstrand patent, No. 1,894,-234, in suit, the contention that it does not infringe this patent because it does not use a "high vacuum" system, but does use a piston system, requires no further consideration, as I have already found that it does use a high vacuum system, in my consideration of the Wheeler patent in suit.

This leaves for consideration only the defendant's contention that its apparatus does not provide "an open transmission line" in the sense that term is used in the said Engstrand patent, and that it does not maintain steam jet means for creating a high vacuum at the discharge end of the transmission line.

It seems quite clear to me that the "open transmission line" required by the terms of this patent is the sludge transmission line 7, as stated (page 1, 11, 87–91): "The material sucked up together with the air by the vacuum created by the steam jet issuing from the annular jet opening 15 is aerated and emulsified by the air during the transfer through the transmission line 7."

That line discharges through the pipe nipple 8 into the slop barge.

While the passage from the line 10 through the receiver, through the orifice 25 and to atmosphere through the line 29 is unobstructed when you handle air alone, it is not the "open transmission line" for sludge when it is handled. The transmission line 7 is interrupted by the valves of the duplex pump. In operation the suction valve opens and the sludge is drawn in to one end of the cylinder, the next stroke is started then the discharge valve is opened.

The defendant does not employ an open transmission line as required by the patent in suit.

The patent does teach that the steam jet pump shall be located at the very end of the transmission line and gives a reason therefor as follows: "It is to be noted that inasmuch as the steam jet pump is located at the very end of the transmission line there is no opportunity for a back pressure to be built up at the discharge end of the pump. * * *" Page 2, lines 36–40.

Claim 1 provides: "by admitting steam at high velocity in the direction of the flow at the discharge end of an open transmission line."

Claim 2 provides: "steam jet means for creating a high vacuum at the discharge end of the transmission line."

The argument before the Examiner cited by defendant cannot be considered as an estoppel.

294

In the alleged infringing devices of the defendant the steam jet means in question is located about 15 feet from the discharge end of the transmission line.

The defendant does not infringe the claims in suit of Engstrand patent in suit, No. 1,894,234.

As to Engstrand patent, No. 1,964,726, no further discussion is necessary of defendant's claim that it employs the piston principle, as I have found that it employs the emulsion principle.

There remains for consideration only the defendant's contention that it does not infringe because it does not employ the requirement of claim 5: "By admitting a high pressure steam jet at high velocity at the intake end of a transmission line."

The steam jet in defendant's structure is located about 25 feet from the intake end of the transmission line.

This patent does not point out that the steam jet should be at the very end of the intake line nor any danger by placing it near the end.

The argument of counsel before the Examiner cannot be used to create an estoppel.

The interpretation of claim 5 is restricted by Engstrand patent, No. 1,743,762, of January 14, 1930 (Exhibit N); Engstrand patent, No. 1,712,694, of May 14, 1929 (Exhibit L.) and Engstrand patent, No. 1,554,076, of September 15, 1925, and therefore claim 5 in suit cannot be construed to cover the defendant's structure in which the steam jet is placed about 25 feet away from the intake end.

The defendant does not infringe the claim in suit of Engstrand patent, No. 1,-964,726.

A decree may be entered in favor of the plaintiff against the defendant for the infringement of claim 1 of the Wheeler patent, No. 1,405,173, with injunction one-half costs, and the usual order of reference, and in favor of the defendant against the plaintiff dismissing the complaint as to the alleged infringement of claims 1 and 2 of the Engstrand patent, No. 1,894,234, without costs, and dismissing the complaint as to claim 5 of the Engstrand patent, No. 1,964,-726, without costs.

Settle decree on notice.

Submit proposed findings of fact and conclusions of law in accordance with this opinion for the assistance of the court as provided by rule 70½ of the Equity Rules, 28 U.S.C.A. following section 723, and rule 11 of the Equity Rules of this court.