[PATENT.]

## KEPLINGER v. DE YOUNG.

A., having obtained a patent for a new and useful improvement, to wit, a machine for making watch chains, brought an action, under the 3d section of the Patent Act of 1800, c. 179. [xxvi.] for a violation of his patent right against B. ; and on the trial, an agreement was proved, made by the defendant with C., to purchase of him all the watch chains, not exceeding five gross a week, which he might be able to manufacture within six months, and an agreement on the part of C. to devote his whole time and attention to the manufacture of the watch chains, and not to sell or dispose of any of them, so as to interfere with the exclusive privilege secured to the defendant of purchasing the whole quantity which it might be practicable for C. to make : And it was proved that the machine used by C. with the knowledge and consent of the defendant in the manufacture, was the same with that invented by the plaintiff, and that all the watch chains thus made by C. were delivered to the defendant according to the contract. *Held,* that if the contract was real and not colourable, and if the defendant had no other connexion with C. than that which grew out of the contract, it did not amount to a breach of the plaintiff's patent right.

Such a contract, connected with evidence from which the jury might legally infer, either that the machine which was to be employed in the manufacture of the patented article was owned wholly or in part by the defendant, or that it was hired to the defendant for six months, under colour of a sale of the articles to be manufactured with it, and with intent to invade the plaintiff's patent right, would amount to a breach of his right.

1825.
~~~
Keplinger
v.
De Young.

ERROR to the Circuit Court of Maryland.

This cause was argued by Mr. *Webster* and Mr. *Sergeant*, for the plaintiff, and by the *Attorney General*, for the defendant.

*March 13th.*

Mr. Justice WASHINGTON delivered the opinion of the Court.

*March 17th.*

This was a suit commenced by the plaintiff, Keplinger, in the Fourth Circuit for the District of Maryland, against the defendant, for the violation of the plaintiff's patent right, secured to him according to law, in a certain new and useful improvement, to wit, a machine for making watch chains, &c. The third count in the declaration, upon which alone this cause has been argued, is in the usual form, charging the defendant with having unlawfully used the said improvement, without the consent of the plaintiff first had and obtained in writing. The defendant pleaded the general issue, and gave notice to the plaintiff that he should deny that the exclusive right of using the improvement mentioned in the declaration, was vested in the plaintiff, or that he was the original and first inventor of the said improvement, and that he should give evidence to establish those facts.

1825.

Keplinger
v.
De Young.

At the trial, the plaintiff read in evidence the letters patent duly granted, bearing date the 4th of May, 1820, and proved, that he was the true and original inventor of the machine specified in the patent, and that the defendant, together with John Hatch and John C. Kirkner, did use the said machine in the making of watch-chains from steel, from the 4th of May till some time in the month of December, 1820.

The defendant, in order to prove that any concern or connexion which he had with the said Hatch and Kirkner, in the making of watch-chains, by means of the said machine, was merely as a purchaser of watch-chains from them under the following contract, produced and gave the same in evidence. The agreement referred to, bearing date the 3d of May, 1820, is between M. De Young, and J. Hatch and J. Kirkner, and witnesses; "that the said Hatch and Kirkner do hereby engage and obligate themselves to manufacture and deliver to M. De Young, or at his store in said city, not less than three gross, but as many as five gross, of wire watch chains, agreeably to a sample to be deposited with T. Barly, (if practicable to manufacture so many,) in each week, from the date hereof, for the term of six months, one half of which number to be with turned slides, and the other half wire slides; the whole number to be four strands, if the said De Young so choose; but he is to are the privilege of directing the description to be furnished, that is to say, what number of four, five, six, or eight strands; the prices of

which to be as follows: four strands, two dollars per dozen; six strands, two dollars sixty-six cents and two thirds per dozen, and eight strands at the rate of three dollars thirty-three cents per dozen; said Hatch & Kirkner to devote their whole time and attention to said manufactory, and neither to sell, barter, nor dispose of, in any manner, or way, or means whatever, of any goods of the description herein before described, or which may, in any manner or way whatsoever, interfere with the exclusive privilege herein before granted, but will faithfully manufacture for said De Young, and none other, as far as five gross of chains per week, if practicable, and not less than three gross per week, at the prices herein before stipulated, and payable as follows: one half in cash at the end of every week, for the total number delivered within the week, and the other half in said De Young's promissory note, payable at sixty days from the date thereof. And the said De Young, on his part, doth hereby promise to receive from the said Hatch & Kirkner, such quantity of watch-chains answering the description of the sample, as it may be in their power to manufacture, not exceeding five gross per week, reserving to himself the privilege of directing what proportion thereof shall be four, six, or eight strands, and pay for the same weekly in the following manner, viz. the one half amount of week's delivery in cash, the other half in a note at sixty days, the same to be settled for weekly; in manner aforesaid, if required."

The defendant also gave evidence to prove

1825.

Keplinger
v.
De Young.

that all the connexion he ever had with the said Hatch & Kirkner, relative to watch-chains made by them with the said machine or otherwise, was merely as a purchaser of such chains from them, under and in pursuance of the said contract.

The plaintiff then proved, that, at the time of making the said contract, the defendant was fully apprized of the existence of the machine described and specified in the patent, and of its prior and original invention by the plaintiff, and of the intention of the plaintiff to obtain the said patent; and that the said contract was made with a view to the employment by the said Hatch & Kirkner, in the manufacture of watch-chains, of a machine precisely similar to that invented by the plaintiff, after the plaintiff should have obtained his patent; and that a machine precisely similar to that invented by the plaintiff was employed by the said Hatch & Kirkner in the manufacture of watch-chains by them under the said contract, and with the knowledge and consent of the defendant during the whole period aforesaid, he and they having received notice, on the 5th of May, 1820, of the plaintiff's patent; and that the watch-chains so manufactured by Hatch & Kirkner, during the whole of the said period, were delivered by them to the defendant, and by him received, under and in conformity with the said contract.

Upon this evidence, the Court, at the request of the defendant's counsel, instructed the jury, that the plaintiff was not entitled to a verdict on the first and second counts in his declaration.

because the acts which they charge, if true, constitute no offence against the plaintiff's patent. And that, if the jury should be of opinion, on the evidence, that the plaintiff is the sole and original inventor of the whole machine ; and that the defendant had no other connexion with Hatch & Kirkner with regard to these chains, than that which arose from his said contract with them, under which he procured the chains to be made by Hatch & Kirkner, and sold them when so made ; and that the said contract is a real contract ; then these acts constituted no breach of the plaintiff's patent-right on the part of De Young, and that the verdict must be for the defendant ; and that this legal aspect would not be changed, although the defendant may, on any occasion, have supplied, at the cost of Hatch & Kirkner, the wire from which the chains so manufactured were made.

To this instruction the plaintiff's counsel took a bill of exceptions, and a verdict and judgment having been rendered for the defendant, the cause is brought into this Court by a writ of error.

The only question which is presented by the bill of exceptions to the consideration of this Court is, whether the Court below erred in the instruction given to the jury ; and this must depend upon the correct construction of the 3d section of the act of Congress, of the 17th of April, 1800, c. 179. which enacts, " that where any patent shall be granted, pursuant to

1825.

Keplinger
v
De Young.

*Question under the bill of exceptions.*

1825.

Keplinger
v.
De Young.

the act of the 21st February, 1793, c. 156. and any person without the consent of the patentee, his executors, &c. first obtained in writing, shall make, devise, *use,* or sell, the thing whereof the exclusive right is secured to the said patentee by such patent, such person so offending shall forfeit and pay to the said patentee, a sum equal to three times the actual damage sustained by such patentee," &c.

*How far the evidence, connected with the contract, might have authorized the jury to infer, that the machine, employed in the manufacture of the patented articles, was owned by the defendant, or was hired to the defendant under colour of a sale of the articles to be manufactured with it, and with intent to violate the plaintiff's patent right.*

The contract, taken in connexion with the whole of the evidence stated in the bill of exceptions, if the same were believed by the jury, formed most certainly a strong case against the defendant, sufficient to have warranted the jury in inferring, either that the machine which was to be employed in the manufacture of the watch-chains was owned in whole or in part by the defendant, or that it was hired to the defendant for six months, under colour of a sale of the articles which might be manufactured with it, and with intent to invade the plaintiff's patent right. Whether the contract, taken in connexion with the whole of the evidence, does or does not amount to a hiring by the defendant of the machine, or the use of it for six months, is a point which is not to be considered as being decided either way by the Court. The bill of exceptions does not call for an opinion upon it.

*Effect of the contract taken per se.*

But the contract taken by itself, amounted to no more than an agreement by the defendant to purchase, at a fixed price, all the watch chains, not exceeding five gross a week, which Hatch

& Kirkner might be able to manufacture in the course of six months, with any machine they might choose to employ; and an agreement on the part of Hatch & Kirkner, to devote their whole time and attention to the manufacture of the chains, and not to sell or dispose of any of them, so as to interfere with the exclusive privilege secured to the defendant, of purchasing the whole quantity which it might be practicable for them to make.

If this contract was real, and not colourable, which is the obvious meaning of the instruction, and the defendant had no other connexion with H. & K. in regard to these chains than what grew out of it, it would, in the opinion of the Court, be an extravagant construction of the patent law, to pronounce that it amounted to a breach of the plaintiff's patent right, by fixing upon the defendant the charge of having *used* the plaintiff's machine. Such a construction would be highly inconvenient and unjust to the rest of the community, since it might subject any man who might innocently contract with a manufacturer to purchase all the articles which he might be able to make within a limited period, to the heavy penalty inflicted by the act, although he might have been ignorant of the plaintiff's patent, or that a violation of it would be the necessary consequence of the contract. It might possibly extend farther, and affect contracts express or implied, though of a more limited character, but equally innocent, as to which, however, it is not the intention of the Court to ex-

1825.

Keplinger
v.
De Young.

Effect of contracts to purchase patented articles from a manufacturer who infringes the patent right.

1825.

Keplinger
v.
De Young.

Effect of the opinion of the Circuit Court, as applied to that part of the case upon which an instruction was asked.

press any opinion, as this case does not call for it.

, This cause was argued by the plaintiff's coun-sel as if the opinion of the Court below had been given upon the whole of the evidence. But this was not the case. No instruction was asked for but by the defendant's counsel, and that was confined to a single part of the case, the con-nexion between the defendant and H. & K., in regard to the watch-chains which the latter bound themselves, by their contract, to manufacture and deliver to the former. If the jury had been of opinion, upon the whole of the evidence, that the contract was not a real one, or that that in-strument did not constitute the sole connexion between those parties, or that the transaction was merely colourable, with a view to evade the law, the jury were not precluded by the instruc-tion from considering the plaintiff's patent right as violated, and finding a verdict accordingly.

The opinion of this Court confined to the single point, upon which the charge of the Court be-low, excepted to, was given.

Had the plaintiffs counsel thought proper to call upon the Court for an opinion and instruc-tion to the jury, upon any points arising out of the whole, or any part of the evidence, it would have been their duty to give an opinion upon such points, leaving the conclusion of fact from the evidence to be drawn by the jury. But this course not having been pursued, this Court can take no notice of the evidence, although spread upon the record, except so far as it is connected with the single point upon which the opinion, which is excepted to was given. As to the resi-due of that opinion, that " the legal aspect of the

case would not be changed, although the defendant might, on any occasion, have supplied, at the cost of H. & K, the wire from which the chains so manufactured were made," it is quite as free from objection as the preceding part of it, since it stands upon precisely the same principle.

Judgment affirmed, with costs.