## SALVAGE PROCESS CO. v. JAMES SHEWAN & SONS, Inc., et al.

District Court, E. D. New York. May 18, 1928.

No. 3103.

1. Patents ⊕⇒26(1¼)—Selection and regrouping of old elements to solve problem of pumping heavy viscous material from tanks of ships was invention.

Even if all elements of invention were old, selection and regrouping to solve problem of pumping heavy viscous material out of tanks of oil-burning ships was invention.

2. Patents ⊕⇒328—No. 1,405,173, for pumping apparatus, claim 1, held valid and infringed; "emulsify."

Patent No. 1,405,173, issued to Hervey J. Wheeler, for pumping apparatus, dated January 31, 1922, claim 1, reading "herein described method of transferring viscous material directly from interior of maritime vessel to an overside receptacle, which consists in creating high vacuum in said receptable to thereby suck such material to an elevation and deliver it directly into said receptacle, and admitting air in small quantities into suction end of conveying pipe to emulsify said material," held valid and infringed, word "emulsify" in claim meaning to form an emulsion, which is an oily substance suspended in some fluid capable of holding it in a state of minute subdivision.

3. Patents ⊕⇒328—No. 1,480,482, for pumping apparatus, claims 1, 2, 3, and 6, held not infringed.

Patent No. 1,480,482, issued to Hervey J. Wheeler, for pumping apparatus, dated January 8, 1924, claims 1, 2, 3, and 6, held not infringed.

4. Patents ⊕⇒328—No. 1,554,076, for pumping apparatus, claim 3, held not infringed.

Patent No. 1,554,076, issued to Gunnar C. Engstrand, for pumping apparatus, dated September 15, 1925, claim 3, held not infringed.

5. Patents ⊕⇒261, 289(2)—Failure of plaintiff or predecessors to bring action for infringement of patent for pumping apparatus for cleaning tanks of oil-burning ships, where defendants ceased using barge in connection with barge having pumping equipment at patentee's request, did not constitute acquiescence or laches.

Failure of plaintiff or any of its predecessors to bring action for infringement of patent No. 1,405,173, for pumping apparatus for cleaning tanks of oil-burning ships, where defendants ceased using barge for removing viscous material from tanks in connection with barge having pumping apparatus, which defendants had right to use, at request of patentee, did not constitute acquiescence or laches.

6. Patents ⊕⇒210—Sale of barge equipped with pumping equipment by patentee held not to include license to use patent for pumping apparatus for cleaning tanks of oil-burning ships.

Sale of barge equipped with pumping equipment by patentee to defendants held not to include license to use patent for pumping apparatus for cleaning tanks of oil-burning ships.

7. Patents ⊕⇒226, 259(1)—Letting of contracts for cleaning of ships by defendant to firm using infringing apparatus held not to constitute "infringement" or "contributory infringement."

Letting by defendant of contracts for cleaning of ships to firm using apparatus infringing on patent No. 1,405,173, for apparatus for pumping viscous materials out of tanks of oil-burning ships, held not to constitute infringement or contributory infringement.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Contributory Infringement; Infringement.]

In Equity. Patent infringement suit by the Salvage Process Company against James Shewan & Sons, Inc., the United Marine & Contracting Corporation, and the Patco Salvage Corporation. Decree for plaintiff against first two defendants for infringement of one patent and in favor of such defendants dismissing complaint as to other patents and in favor of last-named defendant against plaintiff.

Darby & Darby, of New York City (Samuel E. Darby, Jr., of New York City, and Thomas E. Scofield, of Kansas City, Mo., of counsel), for plaintiff.

Foley & Martin, of New York City (Clarence M. Crews, of New York City, of counsel), for defendants.

CAMPBELL, District Judge. This is an action in equity for the alleged infringement of patent No. 1,405,173, issued to Hervey J. Wheeler, for pumping apparatus, dated January 31, 1922, patent No. 1,480,482, issued to Hervey J. Wheeler, for pumping apparatus, dated January 8, 1924, and patent No. 1,554,076, issued to Gunnar C. Engstrand, for pumping apparatus, dated September 15, 1925.

Defendants have interposed the defenses of invalidity and noninfringement and license to the defendant United Marine & Contracting Corporation.

The defendant James Shewan & Sons, Inc., operates a shipyard, and has let one or more contracts to the defendant United Marine & Contracting Corporation, which in performing said contracts has made use of the alleged infringing equipment.

The defendant United Marine & Contracting Corporation is the charterer of the barge Patco, and engaged in pumping viscous material from the tanks of oil-burning ships.

The defendant Patco Salvage Corporation is the owner of the barge Patco, which contains the alleged infringing equipment.

The patents which form the basis of this suit, while broad enough to cover other operations, relate particularly to the art of extracting oils, sludge, sediment, and other things from the tanks of oil-burning ships.

The tanks of oil-burning ships must periodically be cleaned to remove the sediment called "sludge," which is an extremely heavy, viscous material, and also any other material which may find its way into the tanks.

The tanks in question are located in many cases sixty or more feet below the deck of the vessel, and, until the invention of the method of the first patent in suit, the art showed no pumping equipment capable of pumping the heavy, viscous material out of the tanks.

The sole practice prior to the first patent in suit was to clean the tanks by manually filling buckets, pails, barrels, or like receptacles, by means of shovels, and to carry or hoist the containers over the rails of the ship and dump them into a barge alongside the ship for ultimate disposal.

Even Hans E. Danstrup, the designer and builder of defendants' system, and the president and general manager of the defendant Patco Salvage Corporation, admitted that cleaning was never done in any way but by hand before Mr. Wheeler started in, and also that Mr. Wheeler was the first one that was able to lift sludge above thirty-four feet.

The expense to the shipowner under the old method was very heavy, both because of the labor required and the time consumed in cleaning the ship.

The problem that confronted the patentee of the first patent in suit, Hervey J. Wheeler, was to lift the heavy, viscous material higher than it had been possible before that time to lift water, viz. thirty-four feet, and over the side of the ship, not the disposition of the sludge after it had been raised to the required height and over the side of the ship.

Wheeler's solution, which some people thought was contrary to the laws of nature, was the method of the first patent in suit.

[1, 2] The only claim of the first Wheeler patent, No. 1,405,173, on which plaintiff relies in this action, is claim 1, which reads as follows:

"1. The herein discribed method of transferring viscous material directly from the interior of a maritime vessel to an overside receptacle, which consists in creating a high vacuum in said receptacle to thereby suck such material to an elevation and deliver it directly into said receptacle, and admitting air in small quantities into the suction end of the conveying pipe to emulsify said material."

The defendant contends that said claim is invalid (1) for want of patentable novelty over the prior art; (2) because it is fully anticipated by earlier patents; (3) is void for indefiniteness; (4) is not a proper method claim, but is directed to the mere function of a machine; and (5) because it is not supported by a supplemental oath.

All of these contentions were raised on the trial of an earlier suit on this patent in this court, H. J. Wheeler Salvage Co., Inc., v. Rinelli & Guardino, Inc., et al. (D. C.) 295 F. 717, in which the validity of the patent in suit was sustained.

Defendants have offered in evidence substantially the same prior art as was offered in the former suit, with some additional evidence, all of which I have examined, but nothing additional that was offered was as near to the patent in suit as some of the patents that were received in evidence on the former trial, and therefore nothing will be gained by repeating the analysis of the patents received in evidence on the former trial.

The accomplishment of the patentee in the patent in suit was not the mere improvement of a method of pumping, but he introduced a method patentably novel, in that he not only supplanted the manual method theretofore in use, but he did it in an entirely different way, which had not been thought possible, and at a great saving of time and expense, and this clearly constituted invention. Even if all the elements of the invention were old, the selection and regrouping to solve this problem was invention.

The defendants have failed to show any anticipation of the patent in suit, and I cannot find that there was such indefiniteness as to impair its validity.

Undoubtedly the apparatus described in the patent in suit is adapted to and does accomplish the purpose of the patentee, but that purpose may also be accomplished by other forms of apparatus. In fact, it may be accomplished by the creation of a high vacuum in a receptacle by the use of any suitable vacuum pump and a suction hose, provided that the intake end of the hose shall not be wholly submerged in the material, but that a small portion of the orifice be left unsubmerged, so that a relatively small quantity of air may be admitted.

The method of the patent in suit is not the well-known piston and bubble method, and the material is not sucked or pushed up by pistons of air, but, by the use of a high vacuum and the admission of a small quantity of air at the nozzle, it is cracked and carried up in small particles, being emulsified and changed into an oily substance suspended in a fluid (air) capable of holding it in a state of minute subdivision.

The word "small," as used in describing the quantity of air to be admitted at the nozzle, is relative, and its meaning is found by comparing the amount of air admitted to the quantity of material, either by weight or volume.

The word "emulsify" must be construed as the patentee obviously intended; that is, to form an emulsion, which is an oily substance suspended in some fluid (in this instance air) capable of holding it in a state of minute subdivision.

By the method of the patent in suit, the material is not only elevated, but its character is changed.

The defendants have presented nothing which would justify overturning the decision in the former case of H. J. Wheeler Salvage Co., Inc., v. Rinelli & Guardino, Inc., supra, that no supplemental oath was required.

The first patent in suit is valid.

The question of infringement is not so simple as in the former case, because the equipment on which the charge of infringement is based in the suit at bar is quite different in form, and, defendants contend, in the way in which it functions, from that which was found to infringe in the former suit.

Claim 2 of patent No. 1,405,173 is not in issue, only claim 1.

The boat Patco, owned by the defendant Patco Salvage Corporation, which it is claimed infringes all of the patents in suit, is of about four hundred tons' capacity, equipped with a triple expansion engine and two Scotch boilers to drive the engine. From the same boilers there are steam driven two of the units which are used for the tank-cleaning business. The hold of the vessel contains fresh-water tanks, a few oil bunkers for fuel oil, and the remainder is turned into tanks in which is placed the sludge that is taken out of the tanks of the ship being cleaned.

The equipment consists of a suction nozzle that has a reducing coupling from four to three inches, a pipe eight to ten feet long, four inches in diameter, screwed into the nozzle with the reducing coupling. There are no air holes in the nozzle at present used, but the air is admitted at the end of the nozzle, the amount being regulated according to the viscosity of the material, by leaving a portion of the intake end of the nozzle unsubmerged, through which the air enters. This regulation is accomplished by a man at the nozzle all the time the pump is being worked. The pipe is connected with a hose four inches in diameter, which is connected with the pipe on the side of the house of the barge where the oil and air pumps are installed.

The air pumps are located on the starboard side on the forward pump, and on the port side on the after pump. The air pumps are standard pumps that can be bought on the market. The air pump is placed on the same shaft as the oil pump, and operated together with it, but the oil pump can be used alone by cutting off the suction valve of the air pump from the line and opening it to the atmosphere.

The air pump and oil pump being operated together, the oil and air come up together to the manifold, and the air will there go over to the air pump and the oil will come up to the oil pump and be discharged into the tank. Alongside of the oil pumps are strainer boxes into which the oil flows, leaving rivets, bolts, and nuts, and the oil then enters the oil pump.

The steps of claim 1 of the first patent in suit are, "creating a high vacuum in said receptacle to thereby suck such material to an elevation and deliver it directly into said receptacle, and admitting air in small quantities into the suction end of the conveying pipe to emulsify said material."

That air is admitted in small quantities into the suction pipe of defendants' system, whenever it is desired by the defendants, cannot be denied, and that it is possible to admit large quantities of air if so desired does not save from infringement because in the normal operation of the suction pipe a small quantity is admitted.

From observation of the tests of the defendants' equipment, I am convinced that it is not operated by the piston and bubble method, but that the viscous material is emulsified, as that term is used in the patent in suit.

The vacuum created and used by the defendants is about the same as that of the patent in suit; the more viscous the material the higher the vacuum required.

The real question remaining as to this phase of the case is, do the defendants in their system create a high vacuum in a receptacle, to thereby suck the material to an elevation and deliver it directly into said receptacle?

The oil pump used by the defendants may well be an improvement, but the use of the oil pump does not seem to me to relieve from infringement, as the patentee in the patent in suit makes no claim to the method of disposing of the viscous material after it has been elevated and carried over the ship's side, and it therefore makes no difference whether it is pumped or blown out of the receptacle.

Primarily it seems to me that the receptacle was designed as the place where the air separated from the oil, and this the defendants accomplish in the manifold, while the plaintiff accomplishes it in the tank.

I can see no difference in the method used by the defendants and that claimed in the patent in suit. Of course, as the defendants separate the air from the viscous material in the manifold which has but a limited capacity, they must continuously discharge the same, whereas in the patent in suit, the capacity of the tank being greater, a continuous discharge is not required.

The discharge of the material after the separation is an additional step not claimed in the first patent in suit, and the defendants in their use of the Danstrup pump may well be using an improvement in that step, but that will not save them from infringement.

Whatever it is contended the discharged material from the oil pump may show as to emulsification, we must not forget that there has been a separation of the air and material to a great degree, and the material has been allowed to slow down by the increase in the size of the manifold and strainer boxes before it is discharged by the oil pump, and it is not at the discharge of the oil pump that the emulsification plays its part in the method, but at the intake or shortly above it, where the air by its speedy inrush cracks the viscous material and makes possible its lifting to the height desired.

Claim 1 of patent No. 1,405,173 is valid and infringed.

[3] The only claims of the second patent in suit (No. 1,480,482) upon which plaintiff relies in the instant suit are claims 1, 2, 3, and 6, which read as follows:

"1. In an apparatus for pumping viscous material, a vacuum suction line, means allowing atmospheric air to expand into said suction line and mix with the viscous material to be pumped, and means for heating the pumped mixture necessarily cooled by the air expansion.

"2. In an apparatus for pumping viscous material a vacuum suction line, means allowing atmospheric air to expand into said suction line and mix with the viscous material to be pumped, and means for injecting steam into the suction line for heating the pumped mixture necessarily cooled by the air expansion.

"3. In an apparatus for pumping viscous oil, a vacuum suction line, means allowing atmospheric air to expand into said suction line and mix with the viscous oil to be pumped, means for injecting steam into the suction line for heating the pumped mixture necessarily cooled by the air expansion, and means for separating the water condensations from the oil."

"6. The apparatus described, comprising an exhaust tank, means for maintaining a high vacuum therein, pipe connections from said tank to the material to be raised, means providing a steam jet at the end of said pipe connections receiving said material whereby steam may be mixed with the material being raised as the same moves through said pipe connections."

The use of steam for warming fluids is well known, and has been for so long that it is not necessary to go into any extended consideration of the prior art.

It is true that none of the patents offered by the defendant may be held to be an anticipation, but the first patent in suit is prior art to the second patent in suit, and I can see no invention in doing what was obvious and required only the skill of a mechanic, that of heating by steam oil or sludge to facilitate its movement. If there be any invention, it must be in the particular apparatus described in the patent in suit, and the equivalents must be greatly restricted as the invention, if any, is very small. Defendants do not make use of the apparatus described in the second patent in suit.

The patentee in the second patent in suit admits steam through the apertures on his nozzle, whereas the Patco uses either a live jet or the ship's own heating coils, and does not infringe.

[4] Plaintiff relies on but one claim in the patent to Engstrand, the third patent in suit; namely, claim 3, which reads as follows:

"3. An air transmission line for liquids comprising a suction leg and a discharge leg aligned so as to form a continuous transmission and having a by-passed steam exhauster creating an air current therein, and means for preventing the liquid material from entering and passing through the steam exhauster."

In the progress of this patent through the Patent Office, the patent to Schutte, No. 248,355, dated October 18, 1881, was used as a basis for the rejection of all other claims, whereupon the patentee in the patent in suit amended claim 3 to include the clause, "comprising a suction leg and a discharge leg aligned so as to form a continuous transmission and. * * *"

In all respects except the provision for alignment of the intake and discharge legs introduced by amendment, the arrangement of Fig. 2 of the Schutte patent would be an anticipation of the Engstrand patent.

The patent to Arthur, No. 330,366, granted November 17, 1885, which was not cited by the Patent Office, discloses an air transmission line for liquids comprising a suction leg $E$ $F$, and a discharge leg $D$, aligned so as to form a continuous transmission, and having a by-pass exhauster creating an air current therein, and means for preventing the liquid material from entering and passing through the steam exhauster.

The means last mentioned may be taken to be the discharge leg $D$, the same as in Engstrand; the leg $D$ being formed with a trap at the lower end thereof to provide a seal, and being of such length that the weight of the water in pipe $D$, is equal to the the suction power of the exhauster $A$ $B$.

It is hard to see invention in substituting Schutte's steam exhauster for Arthur's exhauster $A$ $B$. If there is invention in the third patent in suit, it is strictly limited by the amendment made to overcome the rejection of the claims of the patent as hereinbefore recited.

In any event, if claim 3 be held valid, the defendants do not infringe, because the Patco does not utilize the feature of the aligned suction and discharge legs, means to form a continuous transmission, the suction leg extending into the oil pump at one side, and the discharge leg taking off vertically in an upward direction, from the same side of the pump, nor does it have any steam exhauster or any by-pass located thirty-four feet in the air, for preventing the liquid material from entering and passing through the exhausting means employed.

[5, 6] Defendants have interposed the defense that the United Marine & Contracting Corporation has a general license under the first Wheeler patent in suit, but did not offer any license in the usual form, but simply a statement in the bill from Wheeler to it for barge No. 1, which he completed and sold to it prior to the date of filing the application for the first patent in suit.

The facts briefly are that, in the latter part of 1919 and the early part of 1920, the patentee Wheeler was the chief engineer of United Marine & Contracting Corporation on a salary basis, but was allowed to do some business on his own account. He purchased barge No. 1, and proceeded to equip her with the pumping equipment, using employees of the United Marine & Contracting Corporation when not otherwise engaged. He purchased the necessary equipment and paid for the same, except an engine, which was purchased by United Marine & Contracting Corporation, and for which he allowed them credit when they purchased the barge No. 1 with its equipment.

The barge was equipped and sold by Wheeler to United Marine & Contracting Corporation, and the president of that company required the patentee, Wheeler, to present a bill. The bill of all the items was set forth, but Wheeler wanted some profit, and, as it was finally presented, the charge was for "oil suction barge complete as per attached bill, $16,300.00." The last item in the attached bill was "for promoting ideas for building oil-pumping equipment, $5,-

000.00." This bill was paid in full by the corporation.

Both Capt. Nichols, who was president and manager of the United Marine & Contracting Corporation at the time, and Wheeler, the patentee, testified that nothing was sold by Wheeler to the company but the barge No. 1, and that the $5,000 in question represented the profit to Wheeler.

No oral testimony was offered on behalf of the company which directly contradicted this testimony. The minutes of the corporation were not offered, and the testimony of John Hudson, who was then a director, and who is now and has been the president of the corporation since Capt. Nichols left, and of James H. B. Mackenzie, who was a director, does not contradict the testimony of Wheeler and Nichols, as neither Hudson nor Mackenzie negotiated with Wheeler with reference to the purchase of the barge No. 1.

The heading of the bill itself negatives the idea of any license to make use of the Wheeler invention except on the particular barge, because the transaction was the sale of "oil suction barge complete as per attached bill, $16,300.00," and the attached bill contained the charges item by item for the barge and its equipment, without any profit to Wheeler, and the reasonable conclusion is that the last item, "for promoting ideas for building oil-pumping equipment, $5,000.00," represented Wheeler's profit.

The defendant United Marine & Contracting Corporation attempts to show acquiescence of Wheeler in its claim of a license, and laches by failure to prosecute it for alleged infringement, until the bringing of the present action by the plaintiff, which is the owner of the Wheeler patent, but the evidence is not only not convincing, but quite to the contrary.

The corporation always had and still has the right to operate barge No. 1. In its operation of barge No. 1, it did, before Wheeler and his companions called at the office of the corporation and saw its president, Mr. Hudson, in 1923, use in connection with barge No. 1 another barge, No. 14, which contained slop tanks, and had attempted to convert the barge No. 14 into a barge for removing the viscous material by strengthening one of its tanks and installing a suction pump with which it attempted to operate. Such operation had proven unsuccessful; not more than two or three jobs having been done with No. 14, which at the time of such visit was not being operated.

At that time Wheeler undoubtedly was interested in preventing the further operation by the corporation of any boat other than barge No. 1. This purpose he seems to have accomplished, as No. 14 was not operated after that time in removing viscous material, but was disposed of for other purposes.

Neither Wheeler nor his successors had any complaint against the said defendant for its actions after his visit until it began to use the barge Patco, which in this action is alleged to use the infringing system.

The failure of the plaintiff or any of its predecessors to bring action for the infringement of the patent, by the small use of barge No. 14 after the defendant had ceased to use barge No. 14 and was not as it appears using any infringing system, did not constitute acquiescence or laches.

No license to use anything but barge No. 1 was sold or given by Wheeler to the United Marine & Contracting Corporation for the $16,300 which he received from it as per the bill in question.

[7] The defendant James Shewan & Sons, Inc., is not a stockholder in the defendant United Marine & Contracting Corporation, nor the charterer of the barge Patco, nor has it any other interest in that barge, nor does it control its operation. The defendant James Shewan & Sons, Inc., merely let contracts to the defendant United Marine & Contracting Corporation for the cleaning of ships. In fact, the amount in money of those contracts since November, 1926, is about the same as the amount in money of the contracts for like purposes made with the plaintiff. The letting of these contracts by the defendant James Shewan & Sons, Inc., to the defendant United Marine & Contracting Corporation, under the circumstances shown, did not constitute infringement nor contributory infringement. Keplinger v. De Young, 10 Wheat. 358, 6 L. Ed. 341; Motion Picture Patents Co. v. Laemmle (C. C.) 186 F. 641.

A decree may be entered in favor of the plaintiff against the defendants United Marine & Contracting Corporation and Patco Salvage Corporation, for the infringement of Wheeler patent No. 1,405,173, with an injunction and costs and the usual order of reference, and in favor of the said defendants against the plaintiff, dismissing the complaint as to Wheeler patent, No. 1,480,482, and Engstrand patent, No. 1,554,076, but without costs, as the question principally litigated was the infringement of the main patent to Wheeler, No. 1,405,173, and the evidence offered by the said defendants was in the main with reference to that patent, and in favor of the defendant James Shewan & Sons, Inc., against the plaintiff, dismissing the complaint, with costs.