**TIGHTS, INC., Petitioner,**

v.

**The Honorable Edwin M. STANLEY, Chief Judge, United States District Court for the Middle District of North Carolina, Respondent.**

No. 71–1018.

United States Court of Appeals, Fourth Circuit.

April 12, 1971.

Jack W. Floyd and Richard W. Ellis, Greensboro, N. C., for petitioner; Thornton H. Brooks for respondent; Paul B. Bell and Samuel G. Layton, Jr., Charlotte, N. C., for Acme-McCrary Corporation and Kayser-Roth Corporation.

Before SOBELOFF, Senior Circuit Judge, and BOREMAN and BRYAN, Circuit Judges.

SOBELOFF, Senior Circuit Judge:

Petitioner, Tights, Inc., is plaintiff in two patent infringement suits pending in the District Court for the Middle District of North Carolina. In each case the District Court granted a motion to

strike petitioner's demand for a jury trial on the issues of validity and infringement, although jury trials were granted to assess damages should the court determine that a valid patent has been infringed. Tights seeks from us a writ of mandamus directing the respondent judge to vacate his order striking the demands for jury trials on the issues of infringement and validity. We agree that the District Court erred in granting the motions to strike.

## I

Tights, Inc., claims ownership by assignment of reissue patent No. RE 25360, a patent on a single garment combining stockings and a panty—commonly known as panty hose. The first case was begun on December 16, 1969, by Tights against Acme-McCrary Corporation alleging infringement of its patent and seeking injunctive relief, an accounting for damages, and an assessment of interest and costs. Acme-McCrary's answer denied infringement and denied the validity of the patent. It also included counterclaims seeking a declaratory judgment that the patent is invalid and not infringed by Acme-McCrary, and seeking injunctive relief and treble damages for alleged violation of the antitrust laws. Tights' reply to the affirmative defense and counterclaim, filed February 19, 1970, included a demand for jury trial on all issues.

On August 20, 1970, Tights instituted a second suit against Kayser-Roth Corporation alleging infringement of the same patent as well as breach of a patent licensing agreement. Again Tights sought both injunctive relief and an accounting for damages. Kayser-Roth, like Acme-McCrary, sought by counterclaim both a declaratory judgment that Tights' patent is neither valid nor infringed, and injunctive relief and treble damages under the antitrust laws. In addition, Kayser-Roth included a third counterclaim for recovery of royalties previously paid to Tights under the patent license agreement. Tights then filed a reply accompanied by a demand for jury trial.

Each defendant filed a motion to strike the demand for jury trial in its case. Both motions were considered by the court at a joint pretrial conference on December 4, 1970. Ten days later the court entered orders striking the jury trial demands as to the issues of validity and infringement, but separating the issues of damages, breach of contract, and violation of the antitrust laws for subsequent determination by a jury. Tights then instituted this petition for mandamus and the defendants below were given the opportunity to respond in accordance with Federal Rules of Appellate Procedure, Rule 21(b).

## II

The Seventh Amendment to the Constitution states:

> In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law.

The Supreme Court has maintained a careful vigilance to assure this right against erosion, as is best illustrated by its decisions in Beacon Theatres v. Westover, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959), and Dairy Queen v. Wood, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962). The latter case bears so strongly on the case at hand that it merits brief summary before we turn to consideration of the arguments in opposition to the mandamus petition.

The *Dairy Queen* case arose from an action filed by the owner of the "Dairy Queen" trademark alleging breach of a licensing contract and infringement of the trademark. The complaint sought temporary and permanent injunctive relief and an accounting of monetary damages. The defendant's answer was accompanied by a demand for trial by jury.

The Supreme Court held that the District Court was in error in striking the demand for jury trial. Justice Black, speaking for the Court, indicated that the claim for monetary damages was a legal one whether characterized as a contract claim, trademark infringement claim, or hybrid of the two:

As an action on a debt allegedly due under a contract, it would be difficult to conceive of an action of a more traditionally legal character. And as an action for damages based upon a charge of trademark infringement, it would be no less subject to cognizance by a court of law.

*Id.* at 477, 82 S.Ct. at 899. The effect of that conclusion was to dictate that the case be tried to a jury:

The holding in *Beacon Theatres* was that where both legal and equitable issues are presented in a single case, "only under the most imperative circumstances, circumstances which in view of the flexible procedures of the Federal Rules we cannot now anticipate, can the right to a jury trial of legal issues be lost through prior determination of equitable claims." * * * Consequently, in a case such as this where there cannot even be a contention of such "imperative circumstances," *Beacon Theatres* requires that any legal issue for which a trial by jury is timely and properly demanded be submitted to a jury.

*Id.* at 472–473, 82 S.Ct. at 897.

Since Tights' claim for money damages is legal in nature, the *Dairy Queen* principles would seem to require that the issues of patent validity and patent infringement, as issues in a legal claim, be submitted to the jury in our case. We turn then to a consideration of the arguments advanced by the respondents.

### III

The argument put forth most vigorously and persistently by the respondents is that "there are no factual questions which are common to the issues of validity and infringement and the separate issues of damages, antitrust violation and breach of contract in these cases." This effort to amputate the issues of validity and infringement from the body of the legal action for damages is doomed to failure.

■ An action at law to recover damages cannot succeed unless the validity and infringement of the patent are first proved. To the extent that resolution of these two issues entails determinations of fact, either party is entitled to demand trial by jury. The fact that the questions of validity and infringement have no factual issues in common with the actual assessment of damages does not sever them from the legal action and remove them from the domain of the jury. Because a suit in equity for injunctive relief also cannot succeed unless the patent's validity and its infringement are proved, these two issues are common to the legal claim for damages and equitable claim for injunctive relief in each of the two cases involved in this mandamus petition. Thus, under *Dairy Queen, supra,* and *Beacon Theatres, supra,* it would appear that Tights is entitled to determination by a jury of any factual questions related to the validity and infringement issues.

■ Respondents have another answer ready at this point. They assert that these two issues are issues of law so that there is no role to be played by a jury. Well established precedent is emphatically to the contrary. *Graver Tank & Mfg. Co. v. Linde Air Products Co.,* 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097 (1950), involved alleged infringement of a patent for an electric welding process and fluxes to be used with it. The Supreme Court, considering only the issue of infringement and particularly the doctrine of equivalents,[1] stated quite explicitly:

A finding of equivalence is a determination of fact. Proof can be made

---

1. This case presented issues of both validity and infringement when first considered by the Court. Graver Tank & Mfg. Co. v. Linde Air Products Co., 336

in any form: through testimony of experts or others versed in the technology; by documents, including texts and treatises; and, of course, by the disclosures of the prior art. Like any other issue of fact, final determination requires a balancing of credibility, persuasiveness and weight of evidence.

*Id.* at 609–610, 70 S.Ct. at 857.

Nor is the issue of validity devoid of factual questions, although the respondents cite Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162 (1950), for the principle that patent validity is a matter of law. That case is far from unambiguous on this point, but has been brightly illuminated by subsequent cases. In Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966), the Supreme Court held two patents invalid under the nonobviousness standard of 35 U.S.C. § 103.[2] The Court's opinion included this elaboration on the nature of the validity issue:

> While the ultimate question of patent validity is one of law, [Great] A. & P. Tea Co. v. Supermarket

[Equipment] Corp., *supra*, 340 U.S. at 155, [71 S.Ct. at 131], the § 103 condition, which is but one of three conditions, each of which must be satisfied, lends itself to several basic factual inquiries. Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined.

*Id.* at 17, 86 S.Ct. 684, at 694.[3]

■ Needless to say, nothing in our opinion is intended to intimate any judgment as to whether the issues of validity and infringement would have to be put to the jury in any given case. By the time a case actually comes to trial the facts may have become sufficiently clear to entitle one party to a resolution of one or both issues as a matter of law. For example, we note that in two cases where the courts of appeals have upheld the right to jury trial[4] the District Courts on remand have held the disputed pat-

U.S. 271, 69 S.Ct. 535, 93 L.Ed. 672 (1949). Rehearing was granted, limited to the issue of infringement with specific desire expressed to hear argument as to the applicability of the doctrine of equivalents. 337 U.S. 910, 69 S.Ct. 1046, 93 L.Ed. 1722 (1949).

2. § 103. Conditions for patentability; nonobvious subject matter

A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

3. The circuits have specifically held that under Graham v. John Deere the questions of what the prior art was, what improvement the patents have effected, and the level of ordinary skill in the pertinent art are factual in nature; only

the ultimate question of obviousness is one of law. *See, e. g..* Waldon, Inc. v. Alexander Manufacturing Co., 423 F.2d 91 (5th Cir. 1970); Kaiser Industries Corp. v. McLouth Steel Corp., 400 F.2d 36 (6th Cir. 1968), cert. denied, 393 U.S. 1119, 89 S.Ct. 992, 22 L.Ed.2d 124 (1969); Hensley Equipment Co. v. Esco Corp., 375 F.2d 432 (9th Cir. 1967).

4. In Monroe Auto Equipment Co. v. Heckethorn Mfg. & Supply Co., 305 F.2d 375 (6th Cir. 1962), the trial court had stricken a demand for jury trial and decided the case in favor of the defendant. *See* Monroe Auto Equipment Co. v. Heckethorn Mfg. & Supply Co., 204 F.Supp. 249 (W.D.Tenn.1961). The Sixth Circuit vacated the judgment and remanded for consideration in light of *Dairy Queen.*

Swofford v. B & W, Inc., 336 F.2d 406 (5th Cir. 1964), cert. denied, 379 U.S. 962, 85 S.Ct. 653, 13 L.Ed.2d 557 (1965), involved an interlocutory appeal affirming the District Court's order granting a discretionary jury trial under Rule 39 (b), Federal Rules of Civil Procedure. *See* Swofford v. B & W, Inc., 34 F.R.D. 15 (S.D.Texas 1963).

ents invalid as a matter of law.[5] In each case that disposition was upheld on appeal.[6] What these cases illustrate is that in a patent infringement suit seeking to recover damages the right to jury trial stands on the same footing as it does in any legal action. In a given case an issue may be foreclosed by the pleadings or by clearly dispositive evidence. And in a patent case, as in any other legal action, that issue may then be removed from the realm of jury determination by such means as involuntary dismissal, summary judgment, instructions to the jury, a directed verdict, or judgment notwithstanding the verdict.[7] But any disputed issues of fact must be left to the jury if either party so desires.

## IV

The briefs filed in opposition to the petition for mandamus argue strongly that patent cases are too complicated and difficult for a jury to deal with. Consequently, our attention is directed to an exception in *Dairy Queen*, which it is argued might be applicable here:

> The necessary prerequisite to the right to maintain a suit for an equitable accounting, like all other equitable remedies, is, as we pointed out in *Beacon Theatres*, the absence of an adequate remedy at law. Consequently, in order to maintain such a suit on a cause of action cognizable at law, as this one is, the plaintiff must be able to show that the "accounts between the parties" are of such a "complicated nature" that only a court of equity can satisfactorily unravel them. 369 U.S. at 478, 82 S.Ct. at 900, 8 L.Ed. 2d 44.

■ The argument that patent cases as a class are inevitably so complicated as to justify their resolution by equitable accounting rather than trial before a jury must be rejected on a number of grounds. Perhaps the most significant difference between equitable and legal actions is the differences in the remedies available. Thus, the test of the availability of equity jurisdiction has always been, as the above quotation from *Dairy Queen* acknowledges, whether there exists an adequate *remedy* at law. For example, equity jurisdiction may be invoked to avoid having to bring multiple suits at law.[8] And an equitable accounting may be sought where the legal remedy is inadequate because the accounts between the parties are too numerous and complicated for a jury to unravel. Kirby v. Lake Shore & Michigan Southern Railroad, 120 U.S. 130, 134, 7 S.Ct. 430, 30 L.Ed. 569 (1887).[9]

However, the Supreme Court has specifically rejected the argument that equity jurisdiction may be invoked be-

---

5. In *Monroe Auto* the District Court denied plaintiff's motion to reinstate its demand for jury trial and adhered to its original judgment on the ground that "[n]o factual dispute needed resolution for the court to conclude as a matter of law that the three claims herein were invalid." Monroe Auto Equipment Co. v. Heckethorn Mfg. & Supply Co., 214 F. Supp. 704, 706–707 (W.D.Tenn.1963).

   In *Swofford* the entire case was submitted to the jury, which found the patent to be both valid and infringed. The judge, however, disregarded the jury findings as to the validity of the patent and held it invalid as a matter of law. Swofford v. B & W, Inc., 251 F.Supp. 811 (S.D.Texas 1966).

6. Monroe Auto Equipment Co. v. Heckethorn Mfg. & Supply Co., 332 F.2d 406 (6th Cir.), cert. denied, 379 U.S. 888, 85 S.Ct. 160, 13 L.Ed.2d 93 (1964); Swof-

ford v. B & W, Inc., 395 F.2d 362 (5th Cir.), cert. denied, 393 U.S. 935, 89 S.Ct. 296, 21 L.Ed.2d 272 (1968).

7. See Federal Rules of Civil Procedure, Rules 41(b), 56, 51, 50(a), and 50(b).

8. *See, e. g.*, Wilson v. Illinois Southern Railway, 263 U.S. 574, 576–577, 44 S.Ct. 203, 68 L.Ed. 456 (1924) (Holmes, J.). For discussions of situations where remedies at law are regarded as inadequate, see Buzard v. Houston, 119 U.S. 347, 352–353, 7 S.Ct. 249, 30 L.Ed. 451 (1886); Parker v. Winnipiseogee Lake Cotton and Woolen Co., 67 U.S. (2 Black) 545, 551–552, 17 L.Ed. 333 (1862).

9. Goffe & Clarkener, Inc. v. Lyons Milling Co., 26 F.2d 801 (D.Kan.1928), discusses many of the early cases upholding and rejecting equity jurisdiction under this rule. 26 F.2d at 802–804.

cause of the complexity and difficulty of issues of *liability* as distinguished from the complexity of accounting damages. United States v. Bitter Root Development Co., 200 U.S. 451, 26 S.Ct. 318, 50 L.Ed. 550 (1906).[10] In the words of Mr. Justice Holmes, "mere complication of facts alone and difficulty of proof are not a basis of equity jurisdiction." Curriden v. Middleton, 232 U.S. 633, 636, 34 S.Ct. 458, 459, 58 L.Ed. 765 (1914).

This distinction between complex accounts and complex issues of liability as sufficient bases for equity jurisdiction is best illustrated by our court's decision in Broderick v. American General Corporation, 71 F.2d 864 (4th Cir. 1934). Broderick was superintendent of banks of the state of New York and sought to recover a statutory assessment against stockholders of the failed Bank of United States. He alleged that the bank's liabilities exceeded its assets by some $34,000,000, exclusive of an additional $10,000,000 of accrued interest owed. Although the questions to be determined in the case included the necessity for taking over the bank and the amount of its assets and liabilities, Judge Parker stated the conclusion of a unanimous court that "[t]he insolvency of the bank and the necessity for an assessment of the stock liability may involve the proof of complicated facts; but as has been frequently held this is no ground upon which equity can assume jurisdiction." 71 F.2d at 868.

If the scope of "equitable accounting" is to be expanded to encompass cases felt to be too complex or esoteric for trial to a jury, we think that expansion must come from the Supreme Court. We do not construe any language in the *Dairy Queen* opinion to sanction this further limitation of the right to jury trial.[11]

But even assuming that resort to an equitable accounting could be justified by the difficulty and complexity of an issue of liability, this case would not present adequate justification. In the first place, the scope of the exception set forth in *Dairy Queen* is tightly confined:

> [I]n order to maintain [a suit for an equitable accounting] on a cause of action cognizable at law, as this one is, the plaintiff must be able to show that the "accounts between the parties" are of such a "complicated nature" that only a court of equity can satisfactorily unravel them. In view of the powers given to District Courts by Federal Rule of Civil Procedure 53(b) to appoint masters to assist the jury in those exceptional cases where the legal issues are too complicated for the jury adequately to handle alone, the burden of such a showing is considerably increased and it will indeed be a rare case in which it can be met.

369 U.S. at 478, 82 S.Ct. at 900. This limitation of the exception would apply as well to a rule justifying equity jurisdiction by the complexity of preliminary issues of liability since those is-

---

10. In the *Bitter Root Development* case the United States, relying partially on the *Kirby* case cited in the text, *supra*, argued that an account could not be justly and fairly taken at law. 200 U.S. at 467, 26 S.Ct. 318. Mr. Justice Peckham responded for the Court:

> The principal ground upon which it is claimed that the remedy at law is inadequate is really nothing more than a difficulty in proving the case against the defendants. The bill shows that whatever was done in the way of cutting the timber and carrying it away was done by the defendants as tort feasors, and the various devices alleged to have been resorted to by the de-

ceased, Daly, by way of organizing different corporations, in order to, as alleged, cover up his tracks and to render it more difficult for the complainant to make proof of his action, does not in the least tend to give a court of equity jurisdiction on that account. 200 U.S. at 472, 26 S.Ct. at 324.

11. Nor does it seem likely that the Court will adopt this limitation in the near future in light of the solicitude it has shown for the Seventh Amendment by its decisions in *Beacon Theatres, Dairy Queen,* and Ross v. Bernhard, 396 U.S. 531, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970).

sues as well as issues of accounting damages may be referred to a master under Rule 53(b) if they are sufficiently complicated. Burgess v. Williams, 302 F.2d 91 (4th Cir. 1962).

Moreover, the patent here at issue does not present the opaque technicalities which might cause a jury particular difficulty. It involves no abstract scientific theories, no intricate mechanical devices, no complex chemical compounds.

## V

Because it has been so insistently urged upon us that patent cases are singularly inappropriate for trial by jury, and that issues of validity and infringement are matters of law not to be left to the jury's speculation, we think it appropriate to add a brief historical review of the use of juries in patent cases.

Patent law is statutory law, and the original patent act in 1790 provided only for monetary relief, specifically, "such damages as shall be assessed by a jury * * *."[12] This statute was repealed and replaced by a new act in 1793. The new law dropped the specific reference to jury trial, but provided that damages were to be recovered in "in an action on the case * * *,"[13] a common law remedy. This specification of recovery by "action on the case" was retained through all subsequent revisions of the patent law until the Patent Act of 1952 substituted the phrase "civil action"[14] to reflect the merger of law and equity in the federal courts.[15]

It was not until 1819, nearly thirty years after enactment of the first patent law, that the federal courts were even authorized to entertain patent infringement suits in equity and grant equitable relief.[16] No patent suits in equity appear in the United States Reports until 1846,[17] although there are numerous reports of earlier appeals in patent cases tried before juries.[18]

Not only has it long been common for patent infringement cases to be brought as actions at law and tried to juries, but the issues of validity and infringement have been held in numerous cases to present questions of fact for resolution by the jury.[19] Typical of these cases is

---

12. Act of April 10, 1790, ch. 7, § 4, 1 Stat. 109.

13. Act of Feb. 21, 1793, ch. 11, § 5, 1 Stat. 318.

14. See 35 U.S.C. § 281.

15. The Third Circuit has considered and rejected the argument that the 1952 revision "expressed an intention to overthrow the well-settled principle that jury trials are available in actions for damages for infringement * * *." Kennedy v. Lakso Company, 414 F.2d 1249, 1252 (3rd Cir. 1969).

16. See Act of Feb. 15, 1819, ch. 19, 3 Stat. 481.
    Apparently injunctions had been granted by federal courts prior to 1819 in several diversity cases involving patents. See Root v. Railroad Co., 105 U.S. 189, 192, 26 L.Ed. 975 (1881).

17. See Simpson v. Wilson, 45 U.S. (4 How.) 709, 11 L.Ed. 1169 (1846); Wilson v. Turner, 45 U.S. (4 How.) 712, 11 L.Ed. 1171 (1846); Woodworth v. Wilson, 45 U.S. (4 How.) 712, 11 L.Ed. 1171 (1846).

18. See McClurg v. Kingsland, 42 U.S. (1 How.) 202, 11 L.Ed. 102 (1843); Prouty and Mears v. Draper, Ruggles, 41 U.S. (16 Pet.) 336, 10 L.Ed. 985 (1842); Philadelphia & Trenton R.R. Co. v. Stimpson, 39 U.S. (14 Pet.) 448, 10 L.Ed. 535 (1840); Shaw v. Cooper, 32 U.S. (7 Pet.) 292, 8 L.Ed. 689 (1833); Grant v. Raymond, 31 U.S. (6 Pet.) 218, 8 L.Ed. 376 (1832); Pennock & Sellers v. Dialogue, 27 U.S. (2 Pet.) 1, 7 L.Ed. 327 (1829); Keplinger v. DeYoung, 23 U.S. (10 Wheat.) 358, 6 L.Ed. 341 (1825); Evans v. Hettich, 20 U.S. (7 Wheat.) 453, 5 L.Ed. 496 (1822); Evans v. Eaton, 20 U.S. (7 Wheat.) 356, 5 L.Ed. 472 (1822); Tyler v. Tuel, 10 U.S. (6 Cranch) 324, 3 L.Ed. 237 (1810).

19. See, e. g., Turrill v. Michigan Southern & Northern Indiana R.R. Co., 68 U.S. (1 Wall.) 491, 17 L.Ed. 668 (1863) (validity); Winans v. Denmead, 56 U.S. (15 How.) 330, 14 L.Ed. 717 (1853) (infringement); Silsby v. Foote, 55 U.S. (14 How.) 218, 14 L.Ed. 394 (1852) (infringement); Wood v. Underhill, 46 U.S. (5 How.) 1, 12 L.Ed. 23 (1847) (validity).

Battin v. Taggert, 58 U.S. (17 How.) 74, 15 L.Ed. 37 (1854). The trial court had taken both issues from the jury, instructing them that a verdict "must be for the defendants." Justice McLean spoke for a unanimous Supreme Court, reversing and remanding for a new trial:

It was the right of the jury to determine from the facts in the case, whether the specifications, including the claim, were so precise as to enable any person skilled in the structure of machines, to make the one described. This the statute requires, and of this the jury are to judge.

The jury are also to judge of the novelty of the invention, and whether the renewed patent is for the same invention as the original patent; and they are to determine whether the invention has been abandoned to the public. There are other questions of fact which come within the province of a jury; such as the identity of the machine used by the defendant with that of the plaintiff's, or whether they have been constructed and act on the same principle.

*Id.* at 85.

Even more pertinent to our case and to respondents' arguments concerning the inappropriateness of jury resolution of validity and infringement issues is Wilson v. Barnum, 49 U.S. (8 How.) 258, 12 L.Ed. 1070 (1850). Wilson as assignee of a patent on a machine for planing, tonguing, and grooving boards, instituted suit in equity seeking an injunction. From the report of the Supreme Court opinion, the patented invention seems much more complex than that involved in our case; the trial involved "[a] great mass of testimony * * * on both sides * * *, and models and drawings produced of the two machines

* * *." *Id.* at 261. Despite the fact that it was sitting in equity, the court ordered the issue of infringement tried by a jury. When the jury was unable to agree, and the two judges of the Circuit Court for the Eastern District of Pennsylvania were unable to agree, the question whether the defendant's machine infringed the plaintiff's patent was certified to the Supreme Court. Chief Justice Taney delivered the opinion of the Court:

The question thus certified is one of fact, and has been discussed as such in the arguments offered on both sides. It is a question as to the substantial identity of the two machines. And its decision must depend upon the testimony of witnesses; the examination of the models and drawings, or of the machines themselves; and the application of mechanical principles and combinations, which the court could learn only from the testimony of persons skilled in the science of mechanics.

\* \* \* \* \* \*

The question now certified being one of fact, we have no jurisdiction; and the case must be remanded to the Circuit Court, to be there proceeded in as law and justice may require.

*Id.* at 261–262.

■ This excursion into history is intended only to illustrate that jury trials in patent cases are no new or revolutionary development in the law. If a revolution has been wrought, it was done by *Dairy Queen* which prohibits our adherence to the old doctrine that "[t]he right to an account of profits is incident to the right to an injunction in copy and patent-right cases." [20] Under

---

20. Stevens v. Gladding, 58 U.S. (17 How.) 447, 455, 15 L.Ed. 155 (1854). Although *Stevens* is a copyright case, patent cases allowing accountings for profits incident to injunctive relief are legion. *See, e. g.,* Rubber Company v. Goodyear, 76 U.S. (9 Wall.) 788, 19 L.Ed. 566 (1869); Livingston v. Woodworth, 56

U.S. (15 How.) 546, 14 L.Ed. 809 (1853). Prior to *Dairy Queen* the Court had even gone so far as to state that

if the case was one for equitable relief when the suit was instituted, the mere fact that the ground for such relief expired by the expiration of the patent, would not take away the jurisdiction,

the reasoning of *Dairy Queen*, because the claim for a money judgment is legal in nature, the right to jury trial on that claim is not lost by combining it with a claim for injunctive relief. *See Dairy Queen, supra*, 369 U.S. at 470–473, 82 S.Ct. 894.

■ We are neither oblivious of nor insensitive to the contentions that the jury trial is a cumbersome and unwieldy mechanism for dealing with the complex factual settings and intricate legal framework of patent cases. We cannot dispute the assertion that the trial of all patent cases to juries would add significantly to the congestion of district court dockets. However, we are compelled to echo the words of Judge Frank, speaking for the Second Circuit in Bereslavsky v. Caffey, 161 F.2d 499, 500 (2d Cir. 1947):

> It is of no moment that we believe that trial by a jury of a patent suit is usually undesirable, since it is well settled that such a trial may be demanded where the sole claim is for money, if the demand be timely, as we hold it was here.[21]

*Beacon Theatres* and *Dairy Queen* have dated this statement of the law, but to the benefit of Tights, since it is now "well settled that such a trial may be demanded" where the claim for money is joined with a claim for injunctive relief.

The writ will issue directing the District Judge to vacate so much of the orders of December 14, 1970, as strike the demands of Tights, Inc., for a jury trial of the issues of patent validity and patent infringement.

and preclude the court from proceeding to grant the incidental relief which belongs to cases of that sort.
Clark v. Wooster, 119 U.S. 322, 325, 7 S.Ct. 217, 30 L.Ed. 392 (1886).

21. Respondents assert that Tights failed to make timely demands for jury trial. However, the issues of validity and infringement raised by the respective counterclaims are, in each case, identical to the issues of validity and infringement raised by the original complaints. Thus, the last pleadings directed to those issues are the replies to the counterclaims. Since Tights joined its demand for jury trial with its reply in each case, the demands were clearly filed within the requisite ten-day period. *See* Federal Rules of Civil Procedure, Rule 38(b).